Jerome WALCZAK, Plaintiff— Appellant,

v.

SAN BERNARDINO COUNTY, a political subdivision of the State of California; et al., Defendants—Appellees.

No. 06–55660.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 2007.

Filed Dec. 26, 2007.

Beltran Beltran, et al., Burbank, CA, for Plaintiff–Appellant.

James H. Thebeau, Office of the County Counsel, San Bernardino, CA, for Defendants–Appellees.

Before: SILVERMAN, WARDLAW, and IKUTA, Circuit Judges.

### MEMORANDUM *

Jerome Walczak appeals the district court's grant of summary judgment in favor of Patricia Nuss, a detective for the San Bernardino County Sheriff's Department. After reviewing Detective Nuss's report of two investigatory pretext calls made to Walczak, the district attorney brought charges against Walczak under California Penal Code § 288(a) for lewd acts upon a child. The pretext calls were undertaken because, without the corroboration Detective Nuss hoped they would provide, the allegations against Walczak would have been barred by the statute of limitations. The alleged molestation took place from 1978 to 1983, was reported in 2002, some nineteen years after the fact, and prosecution would have been barred by California's six-year statute of limitations, Cal.Penal Code § 801 (2003), unless there was "independent evidence that clearly and convincingly corroborate[d]" the alleged "substantial sexual conduct," Cal.Penal Code § 803(g)(2)(B).

Walczak brought this 42 U.S.C. § 1983 action after the assistant district attorney dropped the charges, stating that "the pretext calls did not contain exactly what was summarized by the detective in the supplemental report." Walczak argues that Detective Nuss violated his constitutional rights by deliberately and recklessly disregarding the truth in making material false statements and material omissions in the written reports of her investigation. Detective Nuss claims qualified immunity. Because jury questions were raised on the issue of Detective Nuss's entitlement to qualified immunity, summary judgment should not have been granted.

Police officers are entitled to qualified immunity "if they reasonably believe in good faith that their actions are constitutional." *Smiddy v. Varney,* 665 F.2d 261, 266 (9th Cir.1981) (citation omitted). This immunity is lost where a "plaintiff can *both* establish a substantial showing of a deliberate falsehood or reckless disregard and establish that, without the dishonestly included or omitted information, the magistrate would not have issued the warrant."

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

*Hervey v. Estes,* 65 F.3d 784, 789 (9th Cir.1995) (emphasis in original).

■ First, Walczak came forward with evidence that, taken in the light most favorable to him, establishes "a substantial showing of deliberate falsehood or reckless disregard for the truth." *Hervey,* 65 F.3d at 788. There is no denying that Detective Nuss made several serious misstatements and omissions in the report she presented to the district attorney. In addition, a jury could find that Detective Nuss deliberately or recklessly distorted in an incriminating way comments attributed to Walczak.

Second, these misstatements are material as a matter of law because the remaining information in the reports is insufficient to support the bringing of charges under the heightened requirements of California Penal Code § 803(g) (2003). A magistrate had to be able to find not only ordinary probable cause but, in addition, that the charges were corroborated by independent evidence and that the corroboration was clear and convincing. *Id.* § 803(g)(2)(B). In short, had the officer's report accurately portrayed the pretext calls, clear and convincing corroboration would have been lacking. An accurate report of the pretext calls would have shown that Walczak adamantly denied the allegations and failed to confirm that any substantial sexual conduct occurred.

Detective Nuss is only entitled to summary judgment based on qualified immunity if there are no genuine issues of material fact in dispute. *See Bias v. Moynihan,* 508 F.3d 1212, 1218–19 (9th Cir.2007). Walczak succeeded in raising a genuine issue of material fact because a reasonable jury could find that the material misstatements made by Detective Nuss were made deliberately or with reckless disregard for the truth. *See Hervey,* 65 F.3d at 791 (holding that whether the false statements were made deliberately or recklessly is a factual determination for the jury). We remand for trial on this question.

■ Likewise, Detective Nuss was not properly granted summary judgment on Walczak's malicious prosecution claim because there was a genuine issue of material fact as to whether Detective Nuss made deliberate falsehoods "with the intent to deprive [Walczak] of ... [his] constitutional rights." *Bretz v. Kelman,* 773 F.2d 1026, 1031 (9th Cir.1985) (citation omitted).

**REVERSED and REMANDED.**

IKUTA, Circuit Judge, dissenting:

Government officials are accorded qualified immunity "to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In this case, the majority would strip away a police detective's protection based on little more than the fact that her investigative report reflects her inference, based on her substantial experience investigating child molesters, that Walczak had engaged in criminal conduct. I respectfully dissent.

Detective Nuss investigated a victim's claims that Walczak abused her when she was ten years old. Her investigation included interviewing the victim and setting up two phone calls, one between Walczak and the victim, and one between Walczak and a police officer pretending to be the victim's therapist. Detective Nuss has investigated approximately 2,000 other cases involving allegations of child molestation. Based on her investigation in this case, she believed there was sufficient evidence of abuse to make a presentation to the district attorney. Thereupon, Detective Nuss drafted a report regarding her investigations and provided the report and the tapes of the phone calls to Deputy District Attorney Victor Rodriguez. Rodriguez subsequently authorized the filing of a

criminal complaint, and a magistrate issued a warrant for Walczak's arrest.

After a different district attorney dismissed the charges, Walczak filed a § 1983 claim against Detective Nuss, claiming that she violated his Fourth Amendment rights. The district court held that Detective Nuss was entitled to qualified immunity, and granted her motion for summary judgment.

Walczak can survive summary judgment only if he can make a substantial showing of: (1) "the deliberate falsity or reckless disregard of the truth of the statements" in Detective Nuss's report; and (2) "the materiality of those statements to the ultimate determination of probable cause." *Hervey v. Estes,* 65 F.3d 784, 789 (9th Cir.1995). Walczak can make neither showing.

Walczak claims that Detective Nuss's report differs from the transcripts of the phone calls in material ways. However, a side-by-side comparison of Detective Nuss's report and the transcripts discloses only a handful of immaterial inaccuracies, none of which indicate deliberate falsity or reckless disregard for the truth. The comparison shows that the report is not meant to be a complete summary of the transcripts; rather, it appropriately sets forth Detective Nuss's interpretation of the two telephone calls in light of her experience investigating child molesters. A few examples are instructive.

Walczak identifies the following error. In the transcript of the first call with the victim, Walczak recalled that the victim (a ten-year-old child) was the sexual aggressor, and stated "you moved your hand over to me, and I grabbed it, and I put it away," and "you put your hand over to me, and I grabbed your hand before you ever got to . . . ." (ellipses in original). In the second call (with a police officer pretending to be the victim's therapist), Walczak stated that the victim "grabbed my wrist, And I jerked my hand away . . . ."

Walczak claims that Detective Nuss's report erroneously described the distinction between the first and second calls. The report stated that Walczak "discussed [the incident on the couch] with the victim but changed the story by saying the victim had grabbed his hand and tried to place it on her vaginal area." Although this summary is abbreviated, it is not materially inaccurate.

Walczak identified a second error. Detective Nuss's report stated that Walczak said "he is GUILTY because he never told her mom or her to stop." In the transcript, Walczak stated, "I feel so guilty that I did not stop it there and tell [the victim's mother] about it." He also stated, "You know, I mean, I'm playing. I'm fooling around with her, and I should've—that's—I'm just guilty that—I feel so bad that I even didn't stop it when she was trying to kiss me; tell [the victim's mother] about it." Again, Detective Nuss's report, while summary, is not materially different from the transcript.

Walczak also claims that Detective Nuss's report does not sufficiently highlight his denials in the first telephone call. For example, an excerpt from the transcript states:

Victim: You don't ever remember ever touching me in a wrong place—
Walczak: Uh—no.
Victim:—or kissing me—
Walczak: No.
Victim:—in a way that you wouldn't kiss a little girl?
Walczak: No, I never did that . . . .

Walczak later states at the end of the transcript, "You know, all I remember is that time on the couch." Detective Nuss's report states, "The victim discussed all the prior times he shoved his tongue down her

throat and put his hands inside her panties. He said he just couldn't remember those things, but wouldn't have done something like that." Detective Nuss's report reflects her skepticism of Walczak's denial, but does state that he denied the alleged activity. In describing the second call, Detective Nuss's report further describes Walczak's denials of any abuse.

Taking the report as a whole, any discrepancies between the transcript and the report are far from the type of deliberate deceptions that we have held eliminate a police officer's qualified immunity. *Cf. Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir.1995) (holding that a property owner's § 1983 claim survived summary judgment when an officer obtained a search warrant claiming that a certified Narcotics Investigator had visited the premises and reported smelling P2P and acetone, when in fact the visiting officer stated in deposition that he had no such certification, and no knowledge of what P2P or acetone even smelled like); *Butler v. Elle*, 281 F.3d 1014 (9th Cir.2002) (holding that a trucker's § 1983 claim survived summary judgment when a government investigator told the magistrate that the trucker had failed to pay ton-mile taxes, citing a lack of evidence of payment, when the experienced investigator knew he had never searched the records under the trucker's proper name and had never searched any records as to the second of the two possible ways the trucker might have paid the taxes.)

Moreover, in order to survive summary judgment, Walczak must also establish that any omissions or discrepancies in Nuss's report were material to the ultimate determination of probable cause. In order to toll the statute of limitations under section 803(g) of the 2002 California Penal Code, the prosecutor must be able to corroborate the victim's allegations by clear and convincing evidence. The transcripts provide this corroboration: Walczak admitted the victim sat in his lap, kissed him on the lips, and put her tongue into his mouth; that she walked in front of him naked; and that he wrestled with her or tickled her possibly while he was wearing only a bathrobe. A reasonable jury could interpret these statements as corroboration of the victim's allegations of abuse. *See People v. Ruiloba*, 131 Cal.App.4th 674, 31 Cal.Rptr.3d 838 (2005) (holding that even if a pretext call is not explicit, if a reasonable trier of fact could conclude that defendant and victim were discussing a sexual relationship between themselves during victim's minority, this would corroborate the victim's allegations under section 803(g)). Because there was at least probable cause that the prosecutor could corroborate the victim's allegations by clear and convincing evidence, the alleged discrepancies in Detective Nuss's reports are not material.

The majority states that Walczak survives summary judgment because he succeeded in raising a genuine issue of material fact as to whether Detective Nuss made statements deliberately or with reckless disregard for the truth. Maj. op. at 984. However, this is not the test. To survive summary judgment, Walczak must make a "substantial showing" of judicial deception. *Hervey*, 65 F.3d at 789. Only such a showing could overcome Detective Nuss's qualified immunity, which operates "to protect officers from the sometimes hazy border" between lawful and unlawful action. *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (internal quotation marks omitted). Because Detective Nuss's report contained no material misstatements, and at most occupied that "hazy border" where protection must be granted, Detective Nuss is entitled to qualified immunity and summary judgment. *Id.*

There is a second reason that Walczak's claim cannot survive summary judgment.

Deputy District Attorney Victor Rodriguez authorized the filing of the criminal complaint against Walczak after Detective Nuss provided him with her report and the tapes. In general, a prosecutor's decision that a criminal complaint can be filed immunizes the investigating police officers from damage claims "because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney (Smiddy I)*, 665 F.2d 261, 266 (9th Cir.1981). The burden of proving facts that would overcome the presumption of regularity is on the plaintiff. *Smiddy v. Varney (Smiddy II)*, 803 F.2d 1469, 1471 (9th Cir.1986). The presumption can be overcome by evidence "that the officers knowingly withheld relevant information" or "knowingly supplied false information." *Id.* In this case, however, it is clear that Detective Nuss did not withhold relevant information—the district attorney had the original tapes. Any flaw of omission or discrepancy in Detective Nuss's report could be cured by a review of the other material she supplied. In light of Detective Nuss's providing complete information to the district attorney, Walczak cannot carry his burden of showing that Nuss acted "maliciously or with reckless disregard" for Walczak's rights. *Smiddy I*, 665 F.2d at 267. Accordingly, Walczak did not rebut the presumption of regularity immunizing Detective Nuss from suit.

In sum, Walczak did not make a substantial showing that Detective Nuss acted with deliberate falsehood or reckless disregard for the truth. Nor could Walczak overcome the presumption of regularity that arose when the district attorney decided to file a criminal complaint. As the Supreme Court has noted, "qualified immunity ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Detective Nuss's conduct does not rise to this level, and therefore she is entitled to qualified immunity.

While our precedent does indicate that a "substantial showing" of judicial deception is sufficient to overcome summary judgment and qualified immunity, what qualifies as a "substantial showing" must be determined in light of the Court's qualified immunity test which our "substantial showing" test was only meant to apply, not to alter. An officer is entitled to qualified immunity unless "a reasonable official would understand that what he is doing violates" defendant's rights. *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Taking as true the details of the officer's conduct as alleged by the plaintiff, where it is unclear whether or not such conduct is lawful or unlawful, the officer's qualified immunity is intact. *See, e.g., Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (holding that where it was unclear whether or not the alleged facts constituted excessive force, the Court of Appeals erred in permitting the case to go to trial, because "[q]ualified immunity operates ... to protect officers from the sometimes 'hazy border between excessive and acceptable force,' and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful") (internal citation omitted). Because "[i]n the circumstances presented to this officer ... neither respondent nor the Court of Appeals has identified any case demonstrating a clearly established rule prohibiting the officer from acting as he did," I would affirm. *Id.* at 209, 121 S.Ct. 2151.