Filed 10/1/24  P. v. Huerta CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099525 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE000118) |
| v. | |
| ANGEL DIEGO HUERTA, | |
| Defendant and Appellant. | |

Defendant Angel Diego Huerta pled guilty to charges related to a hit and run while he was intoxicated.  His sole contention on appeal is the trial court abused its discretion in denying his *Romero*[1] motion at sentencing.  We disagree.  Having found clerical errors in the abstracts of judgment and an inconsistency within the oral pronouncement of

---

[1]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

1

judgment, we will issue a limited remand to the trial court to allow the court to clarify whether the personal infliction of great bodily injury attendant to count one was stayed and correct clerical errors in the abstracts of judgment. In all other respects, we will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are not disputed in this appeal.[2] In December 2018, Huerta was driving with a blood-alcohol level of .19 percent[3] when he swerved and hit K.C., who was skateboarding in the bike lane. K.C. went through one of Huerta's car's windows and got stuck in the car. Huerta continued to drive approximately two and a half miles away from the scene with K.C. still stuck in the car. After stopping the car, Huerta told K.C. he had called the police. K.C. did not believe him and asked him to call her mother. Huerta dialed her mother's phone number but canceled the call. Instead, Huerta walked away, leaving K.C. behind in the car. K.C. suffered pelvic and spinal fractures, severe tibia fractures, a skull fracture, and injuries to the arteries in her legs. At the time, Huerta was on parole for a previous conviction for driving under the influence and was prohibited from drinking alcoholic beverages.

---

[2] We take the substantive facts from the stipulated factual basis of the plea as stated by the People during the change of plea hearing and the probation report. While the probation report was not part of the stipulated factual basis, both parties relied on it in their briefing. Because the parties do not dispute the facts in the probation report, we incorporate those facts in the factual background. (See, e.g., *County of El Dorado v. Misura* (1995) 33 Cal.App.4th 73, 77 [where counsel agree, appellate court may accept facts as true]; *People v. Ruiloba* (2005) 131 Cal.App.4th 674, 684.)

[3] The probation report, appellant's opening brief, and respondent's brief say the blood-alcohol level was 0.169 percent but the stipulated factual basis says the blood-alcohol level was 0.19 percent. The first result from a device in the field was 0.169 percent but a later blood sample through a blood draw was 0.19 percent.

2

Huerta pled guilty to driving under the influence causing injury (Veh. Code, § 23153, subd. (a); count one),[4] driving with a 0.08 percent or higher blood-alcohol content causing injury (§ 23153, subd. (b); count two), hit and run involving serious injury (§ 20001, subd. (b)(2); count three), misdemeanor driving when his driving privileges were suspended or revoked for a conviction of driving under the influence (§ 14601.2, subd. (a); count four), and misdemeanor operating a vehicle without a required interlock device (§ 23247, subd. (e); count five). As to counts one and two, Huerta admitted he was previously convicted of driving under the influence causing injury in 2011 and he personally inflicted great bodily injury upon K.C. in the commission of the offenses (Pen. Code, § 12022.7, subd. (a)). Huerta also admitted he had two prior strike convictions (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and two prior serious felony convictions (Pen. Code, § 667, subd. (a)) for first and second degree robberies in 2014. Huerta waived a jury trial on the aggravating circumstances.

After the plea hearing, the probation department filed a sentencing report. The report stated that in less than five years, Huerta was found guilty of 10 rules violations while in custody, including: possessing "pruno" (jail-made alcohol) twice, being under the influence of pruno twice, fighting with other inmates twice, manipulating the lock mechanism on his cell door, entering another inmate's cell and insubordination/disobedience, damage to county property, and failure to rise for the count.

Before sentencing, Huerta filed a *Romero* motion, arguing the trial court should dismiss his prior strikes based on their age, his remorse, and a favorable psychological evaluation. The psychological evaluation detailed how Huerta began drinking

---

**4**  Undesignated statutory references are to the Vehicle Code.

excessively at age 12, was drunk and high when he committed the prior strikes, and participated in Alcoholics Anonymous meetings in prison. While acknowledging Huerta had a serious substance abuse problem, the evaluation concluded he was doing well since his imprisonment and could become a valuable and contributing member to society if he was "afforded some type of comprehensive alcohol and drug abuse program." Huerta also attached letters of support and certificates of completion in self-improvement programs to his motion.

The People filed an opposition to Huerta's *Romero* motion, arguing that the circumstances of the current offenses and prior strikes weighed against dismissal of the prior strikes. The People's opposition included a partial transcript of a phone call Huerta made after he was arrested for the current offenses. In that phone call, he blamed his father for "[getting] [him] drunk," complained that he had also gone through the windshield, and told the person he called to "get hold of [K.C.] and see if she's gonna p[r]ess charges." The opposition also included the probation report from the prior strikes, which detailed the circumstances of the two robberies. Huerta and his accomplice committed first degree robbery by forcing their way into a 90-year-old victim's home, knocking the victim to the ground, and stealing the victim's wallet and the victim's wife's jewelry box. The victim suffered neck pain from the fall. A couple of days later, Huerta and his accomplice committed second degree robbery by attacking a 78-year-old victim and taking the victim's briefcase and the victim's wife's purse. The victim suffered abrasions to his head and face and a large hematoma on the side of his head.

At sentencing, defense counsel argued that "notwithstanding the horrific nature of the offense and the injuries sustained by [K.C.]," Huerta was remorseful and was doing "as much rehabilitation as he can." Regarding the nature of the prior convictions, defense counsel said that it was Huerta's accomplice who personally inflicted injury on the victims.

4

In evaluating the current offense and prior convictions, the trial court said they were both violent. As to the current offenses, the trial court noted Huerta's "criminal and calculating efforts to avoid the consequences of his actions by leaving the victim alone to die that night" and recounted that the prior strike convictions "were violent and put two separate elderly victims in substantial fear so he could take their property with another co-defendant." While the prior strike convictions were almost nine years old, the trial court noted that Huerta spent most of that time either in prison, on parole, or in pretrial custody for the current offenses. The court also found Huerta's "appalling" phone call from jail demonstrated a lack of remorse and referenced his 10 rule violations while in custody.

The trial court evaluated Huerta's background, character, and prospects for rehabilitation. It acknowledged Huerta's positive letters of support, psychological evaluation, gainful employment, and willingness to participate in rehabilitation programs. However, the court emphasized Huerta had already "been afforded many opportunities while in state prison, while on parole and on probation to seek services that might help him avoid a life of crime, and he has failed to achieve any expectation within reason that future rehabilitation will do him any good." For instance, Huerta would have already received comprehensive alcohol education after his 2012 conviction for driving under the influence. Having "considered all of [the *Williams*][5] factors and weighed them," the court found "dismissing one of the prior strike convictions would fall outside the spirit of the three strikes law." The court thus denied Huerta's *Romero* motion.

The court imposed: an indeterminate term of 25 years to life for count one, plus three years for the personal infliction of great bodily injury enhancement attendant to

---

[5] *People v. Williams* (1998) 17 Cal.4th 148, 161.

5

count one; and the upper term of four years, doubled to eight years for a prior strike, for count three. The court imposed and stayed: an indeterminate term of 25 years to life for count two, plus three years for the personal infliction of great bodily injury enhancement attendant to count two; six months for count four; and one year for count five. As to the prior serious felony conviction enhancement, the court stated, "[Huerta] is sentenced pursuant to Penal Code [s]ection 667[,] subdivision (a)[,] to an additional . . . five years." Then, the court stated it "adopt[ed] the recommendation[6] of [a] five-year term, but that's not included in the total" because "the five-year term is stayed." Before concluding the hearing, the court pronounced the aggregate term was eight years consecutive to the indeterminate term of 25 years to life.

## DISCUSSION

### I

#### *Abuse of Discretion*

Huerta contends the trial court abused its discretion by denying his *Romero* motion to strike the prior convictions. He avers that the circumstances of his prior strikes and current offenses, his background, and his postarrest conduct place him outside the spirit of the law. We conclude the trial court did not abuse its discretion.

A.      *Legal Background and Standard of Review*

When deciding whether to dismiss a prior strike allegation, a trial court determines whether the defendant falls outside the spirit of the "Three Strikes" law. (*People v. Williams, supra*, 17 Cal.4th at p. 161.) To make this determination, the trial court

---

**6**      The probation report for the current offenses stated that while Huerta admitted two prior serious felony convictions, the two convictions were brought and tried together. Thus, the report recommended imposing only one prior serious felony conviction enhancement.

considers (1) the nature and circumstances of the present felony, (2) the nature and circumstances of the prior strike offenses, and (3) the particulars of the defendant's background, character, and prospects for the future. (*Ibid*.)

We review a decision declining to dismiss a prior strike allegation for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) A trial court abuses its discretion when it refuses to strike a prior felony conviction only in limited circumstances, such as where the court is unaware of its discretion to dismiss or considers impermissible factors in refusing to dismiss, or if the sentencing norm under the Three Strikes law leads, as a matter of law, to an arbitrary, capricious, or patently absurd result under the circumstances of the individual case. (*Id*. at p. 378.)

Additionally, the burden is on the party attacking the sentence to show that the sentencing decision was irrational or arbitrary. (*People v. Carmony, supra*, 33 Cal.4th at p. 376.) Only in the "extraordinary case . . . where the [*Williams* factors] manifestly support the striking of a prior conviction and no reasonable minds could differ," will the failure to strike constitute an abuse of discretion. (*Id*. at p. 378.) An appellate court may not substitute its judgment for that of the trial court. (*Id*. at p. 377.)

### B. Analysis

The trial court considered the current offenses and the nature and age of the prior strike offenses. It found Huerta took "criminal and calculating efforts to avoid the consequences of his actions by leaving [K.C.] alone to die" and both the current offenses and prior strikes were violent. The court also evaluated Huerta's background, character, and prospects when it considered his positive letters of support, psychological evaluation, employment, and willingness to participate in rehabilitation programs. But as the trial court noted, Huerta had already received several opportunities to rehabilitate but "failed to achieve any expectation within reason that future rehabilitation will do him any good." Even after Huerta was in custody for the current offenses, he possessed and was under the

7

influence of pruno multiple times and demonstrated lack of remorse in a phone call he made from jail.

The trial court indicated it understood its discretion, listed and carefully considered the *Williams* factors, and identified the various facts that informed its assessment of those factors. After evaluating and weighing all these factors, the trial court found Huerta fell within the spirit of the Three Strikes scheme. On this record, we cannot say the court abused its discretion.

II

*Abstracts of Judgment*

The People correctly contend the indeterminate abstract of judgment does not reflect that the trial court stayed the sentence on count two. On review, we found an additional clerical error in the determinate abstract of judgment that requires correction and an inconsistency within the oral pronouncement of judgment that requires clarification and possibly correction.

At the oral pronouncement of judgment, the trial court imposed a term of 25 years to life, plus three years for the great bodily injury enhancement, on count one; imposed and stayed, pursuant to Penal Code section 654, an identical term on count two; and imposed a term of eight years on count three. But later in the hearing, the court stated the aggregate prison term was a determinate term of eight years consecutive to the indeterminate term of 25 years to life. The trial court also indicated it adopted the probation report's recommendation of imposing only one five-year term for the prior serious felony conviction enhancement and decided to stay it.

The indeterminate abstract of judgment reflects the 25-year-to-life sentences on counts one and two but does not indicate the sentence on count two was stayed. The abstract also reflects that both three-year terms on the great bodily injury enhancements attendant to counts one and two were stayed. The determinate abstract of judgment does

8

not reflect either the imposition or stay of the five-year prior serious felony conviction enhancement.

Typically, where the abstract of judgment and the court's oral pronouncement are at odds, we direct the trial court to amend the abstract of judgment to comport with the sentence orally imposed. (See *People v. Delgado* (2008) 43 Cal.4th 1059, 1070 [when oral pronouncement of judgment conflicts with abstract of judgment, oral pronouncement prevails]; *People v. Mitchell* (2001) 26 Cal.4th 181, 187 [Court of Appeal may correct errors in abstract of judgment at any time].) Here, the trial court orally pronounced the terms for count two and the prior serious felony conviction enhancement were stayed but the oral pronouncement is not accurately reflected in the abstracts of judgment. We therefore direct the court to amend the abstracts of judgment to reflect the oral pronouncement that the sentences on count two and the five-year prior serious felony conviction enhancement are stayed.

Although we may correct clerical errors at any time, we are not convinced *all* of the errors are clerical. The oral pronouncement of judgment is internally inconsistent. It is unclear whether the trial court intended to impose the great bodily injury enhancement attendant to count one or intended to impose and stay said enhancement. Accordingly, we will remand the matter to the trial court for clarification of whether the enhancement attendant to count one is stayed, and modify the indeterminate abstract of judgment, if necessary. (See *People v. Prater* (1977) 71 Cal.App.3d 695, 703.)

9

## DISPOSITION

The matter is remanded to the trial court for the limited purposes of: (1) clarifying whether the personal infliction of great bodily injury enhancement as to count one is stayed and modifying the indeterminate abstract of judgment, if necessary; (2) correcting the clerical error in the indeterminate abstract of judgment to reflect the term of 25 years to life for count two is stayed; and (3) correcting the clerical error in the determinate abstract of judgment to reflect the prior serious felony conviction enhancement is stayed. The court shall prepare amended abstracts of judgment and forward them to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


/s/
EARL, P. J.


We concur:


/s/
ROBIE, J.


/s/
RENNER, J.

10