Filed 2/4/22  P. v. Sipes CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>JEFFREY TODD SIPES,<br><br>     Defendant and Appellant. | F081591<br><br>(Super. Ct. No. F17902405)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Gary D. Hoff, Judge.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Jeffrey Todd Sipes appeals his convictions for various child molestation offenses against Jane Doe in the years between 1991 and 1997, and seeks review of issues pertaining to two counts of child pornography possession to which he pleaded no contest prior to trial.

Following a bench trial, defendant was convicted of nonforcible lewd or lascivious acts against a child under the age of 14 years (Pen. Code, § 288, subd. (a) (section 288(a) or § 288(a)); count 4);[1] forcible lewd or lascivious acts against a child under the age of 14 years (§ 288, subd. (b); count 3); forcible rape (§ 261, subd. (a)(2); count 5); and sexual penetration of a minor 14 years of age or older (§ 289, subd. (a); count 9). Prior to the trial, defendant pleaded no contest to possession of child pornography (§ 311.11, subd. (a) (section 311.11(a) or § 311.11(a)); count 1), and to possession of child pornography with aggravating circumstances (§ 311.11, subd. (c)(1) (section 311.11(c)(1) or § 311.11(c)(1)); count 2).[2]

At sentencing, the trial court imposed fully consecutive six-year middle terms for each conviction under counts 3, 4, 5 and 9 (§§ 261, subd. (a)(2), 264, 288(a) & (b), 289, subd. (a), 667.6, subd. (d)); a consecutive eight months (one-third of the two-year middle term) for count 2 (§ 311.11(c)(1)); and a concurrent term of two years for count 1 (§ 311.11(a)). Thus, the aggregate term imposed was 24 years 8 months.[3]

---

[1]    All further statutory offenses are to the Penal Code unless otherwise indicated.

[2]    Counts 6, 7 and 8 were dismissed during the trial.

[3]    The sentencing triads under section 288, subdivision (b), and section 289, subdivision (a), were amended after the offenses were committed. (See Stats. 2010 (Assem. Bill No. 1844) ch. 219, § 7 [increasing § 288, subd. (b), triad to "5, 8 or 10 years"], § 9 [amending § 289, subd. (a), to include subparagraph (C) and providing for a sentencing triad of "6, 8, or 10 years"].) At the time the offenses were committed, the applicable version of these statutes provided for a middle term of six years.

On appeal, defendant argues the independent evidence purportedly corroborating Jane Doe's allegations was not substantial evidence, the statute of limitations for the molestation offenses should not have been tolled, and those counts (counts 3, 4, 5 and 9) must be reversed. For the reasons discussed below, we conclude the independent evidence the trial court found corroborated Jane Doe's allegations clearly and convincingly constituted substantial evidence to support the corroboration requirement under section 803, subdivision (f)(2)(C) (section 803(f)(2)(C) or § 803(f)(2)(C)).

With respect to counts 1 and 2 to which he pled no contest, defendant contends separate convictions under section 311.11(a) and (c)(1) are legally impermissible because section 311.11(c)(1) does not state a substantive offense—it is an alternate penalty provision. As such, defendant argues he should not have been charged or convicted of a separate, substantive offense under section 311.11(c)(1). We conclude defendant's failure to obtain a certificate of probable cause under section 1237.5 precludes assertion of this claim on appeal because it implicates the validity of his no contest plea to count 2 under section 311.11(c)(1). For the same reason, defendant's alternative and related ineffective assistance of counsel claim is also not cognizable on appeal.

For the reasons discussed below, the judgment is affirmed.

## BACKGROUND

Upon receiving a tip from Google, processed through the National Center for Missing and Exploited Children, law enforcement officers with the Central California Internet Crimes Against Children (ICAC) task force linked defendant to potential possession of child pornography. The task force, which included, among others, Fresno Police Officer David Wilkin and Fresno County Sherriff's Deputy Kenneth Kalar, executed a search warrant at defendant's residence on April 17, 2017.

Discovered among defendant's various electronic devices in his home were 298 images depicting child pornography, 32 videos containing child pornography, and over

3.

400 photographs of young female children taken either from defendant's residence or in and around a Walmart store.

Officer Wilkin and a second detective interviewed defendant during the search of his residence, after which defendant was arrested. During the interview, defendant admitted to officers he had a sexual interest in viewing the child pornography. After the interview, Wilkin made attempts to contact defendant's daughter, who was a minor, to determine whether defendant had committed any contact sex offenses against her. In doing so, Wilkin telephoned defendant's former wife, Karen, whom Wilkin thought was the mother of defendant's minor child.

Karen explained to Wilkin that her daughter, Jane Doe, was not defendant's child; she was not defendant's ex-wife with whom defendant shared a child. Jane Doe was born in 1981 and had lived with Karen and defendant while they were a couple. Through Karen, Wilkin was put in touch with Jane Doe, and he interviewed Jane Doe in April 2017. Jane told Wilkin she remembered several instances when defendant had molested her as a child.

Defendant was ultimately charged with two counts of child pornography possession under section 311.11(a) and (c)(1), and seven additional sex offenses. Prior to trial, defendant pleaded no contest to the two child pornography possession counts, and the remaining sex offense charges were tried without a jury.

Details about the child pornography offenses were admitted at trial under Evidence Code section 1108 as evidence of defendant's propensity to commit the earlier sex offenses against Jane and to corroborate Jane's allegations of abuse under section 803, subdivision (f) (section 803(f)). The trial exhibits included 12 of the 298 images depicting child pornography; 12 of the 32 videos depicting child pornography; six images of small female children photographed from a school bus, 21 images of child "erotica" that appeared to be taken at a retail store, and various images taken from inside defendant's residence of children outside the residence. The child pornography images

and video exclusively portrayed minor, female subjects most of whom were prepubescent. The ages of female children on the video exhibits ranged from approximately six years old to 10 years old, and several videos depicted the vaginal penetration of the victims by an adult male penis and showed the victims orally copulating a male penis.

According to Jane Doe, she lived with her mother and defendant from the time she was four or five years old until she was 16 years old, at which time her mother and defendant separated and subsequently divorced. While the three of them lived together, no one else lived with them; but they moved frequently. Jane Doe described several times when defendant was physically abusive. When she was eight or nine years old, he hit her in the face; he would often spank her with wire or plastic hangers or a belt. The belt left marks on the back of her legs, and she remembered welts and bruises. She remembered being very scared of defendant during her childhood, and she saw him hit her mom on at least two occasions that she could remember.

When she was four or five years old, defendant came into her bedroom and began touching her leg and her butt. Her next memories of sexual abuse related to when she was in the fourth grade and about 10 or 11 years old; they were living at an apartment on Villa Avenue. During one occasion, she was asleep in her room at night when defendant woke her up by pulling down the pajama pants Jane was wearing. He touched her vagina for a bit, and then he left her room. This happened several times when she was in fourth grade through seventh grade, and it seemed like more abuse occurred each time—at first, he would just touch her vagina, but on subsequent occasions he inserted his fingers. She remembered a separate incident while living at that apartment when defendant checked her head for lice while he was standing naked in front of her.

When she was about 13 years old, defendant started putting his mouth on her vagina after the family moved from the Villa Avenue apartment to a house. This occurred while she was sleeping, and she was awakened by him placing his mouth on

5.

her. On these occasions, she had been sleeping on her side and her pajama bottoms had been pulled down. When she was 15 years old, she remembered an episode where he put his penis on her vagina and then partially inserted it. That too began while she was sleeping, and she awoke to find defendant touching her vagina. He penetrated her vagina with his penis on more than one occasion, but not more than five times. She also recalled him putting his fingers inside her vagina when she was 15 years old, but she could not recall if this was separate from the time when he inserted his penis partially into her vagina. She could not recall how many times defendant came into her room while she was sleeping and sexually assaulted her—it was more than 10 times—but she specifically recalled four instances.

Jane never told her mother what defendant was doing. She remembered a disturbance between her mother and defendant at one point in her childhood, but she did not recall her mother ever kicking defendant out of the home or that defendant had ever come into her room naked. She could not recall whether defendant was naked when he molested her.

According to Karen, Jane's mother, Karen and defendant started dating in 1982 or 1983, they were married in 1988, and their divorce became final in 1999. Defendant was physically abusive with Karen and her daughter during the time they all lived together. She recalled him hitting Jane on the legs and butt with a belt.

Defendant would frequently stay up late after Karen and Jane had gone to bed. During one night when Jane was about 11 or 12 years old, from her bedroom Karen heard defendant in the bathroom, she thought he was "getting stoned," and then she saw him peeking into Jane's room—defendant was naked. She saw him walk into Jane's room, so she got up and followed him. Jane appeared to be asleep, but defendant was touching Jane's arm and saying something Karen could not hear. When Karen started asking defendant what he was doing, he jerked around and said Jane was having a bad dream. Karen accused defendant of touching Jane, they got into a huge fight, and she kicked

6.

defendant out of the house. Someone in the apartment complex called the police—it was not Karen—and two police officers came to the apartment. She told the officers she and defendant had had a fight and defendant had left, but she did not tell them anything about seeing defendant naked in Jane's bedroom—she was too embarrassed. He was probably gone from the apartment for about two weeks. Defendant convinced her that he had done nothing wrong; she had no money, so she continued the relationship with defendant.

Karen and Jane's paternal grandmother were involved in a custody dispute regarding Jane when Jane was young. Jane's grandmother had some weekend custody, and Karen could recall being accused by the grandmother of abuse, and Child Protective Services would show up at Karen's house frequently. Karen remembered telling Wilkin about prior allegations of sex abuse made against family members. She told Wilkin that defendant had accused someone of placing a foreign object in Jane Doe's vagina—he was blaming Jane's grandmother or her cousin. She never heard Jane complain about being molested by her grandmother or her grandmother's boyfriend, Carl.

Jane herself could not recall abuse by Carl, nor could she remember talking to her paternal grandmother about anything related to abuse.[4]

Defendant's biological daughter testified on his behalf. She had regularly stayed with defendant two or three weekends per month until he was arrested in 2017; he had a reputation for honesty, and he was never physically violent or abusive. Defendant's mother and sister also testified on his behalf.

Defense expert Dr. Richard Blak met with defendant and evaluated his mental state related to the sexual offenses alleged; he reviewed case-specific material, including

---

[4]     After Jane Doe's trial testimony, the prosecutor moved to dismiss counts 6, 7, and 8 based on insufficiency of evidence, which the court granted. The prosecutor also moved to amend the second amended information as follows: on count 3, the prosecutor requested to amend the date range alleged from "January 20, 1991[,] through January 19, 1992" to read "January 20[,] 1991, through January 19, 1994"; on count 5, the prosecutor sought to delete the words "for the first time" alleged at the very end of the count. Over defense counsel's objection, the court granted these amendments.

defendant's police interview. He opined defendant has a "pedophilia orientation or a tendency to engage in pedophilic behavior."

Defendant testified on his own behalf. He confirmed he had started dating Jane's mother in 1983 when Jane was about two years old. He took on the role of her father, and was involved in her upbringing until she was 14 or 15 years old. He and Karen stopped dating before Jane graduated from high school. Karen invited defendant to Jane's high school graduation, which he attended.

He recalled Karen was involved in custody disputes with Jane's grandmother, and the grandmother obtained visiting rights every other weekend. He testified Karen told him on one occasion that Jane's grandmother used a shampoo bottle on Jane's private parts, and he advised her to report it to the police, which she did. Jane told police that her grandmother's boyfriend, Carl, had placed his finger in her vagina. The visitation with the grandmother stopped for a while, but then resumed.

Defendant denied ever being nude in Jane's room. He acknowledged he had disciplined Jane at times, but he never instigated any corporal punishment. He and Karen broke up and separated several times. He denied ever abusing Karen or Jane physically, although he acknowledged name-calling and instances of pushing and shoving occurred.

Defendant explained he was a school bus driver from approximately 1998 until 2017, when he was arrested. He had taken photos of young girls on a number of occasions when the children would go on field trips and the kids would pose for pictures. He also took pictures from the inside of his home, but some photos were also taken by his daughter or her friends. He admitted taking some of the photos in public, perhaps in a grocery store.

While he acknowledged there were a lot of pictures of young girls engaged in sex acts on his computers, he never masturbated to the images. He believed he developed a sickness as it relates to viewing and watching those images, but he denied having a sexual interest in children. Although he had accessed the pornography on his computer since

8.

about 2012 or 2013, he reiterated he had no sexual attraction to children—he could not explain why he looked at the pornography. He was not being truthful with Officer Wilkin during the interview—he did not get aroused while viewing child pornography.

After the close of evidence and counsel's closing arguments, the court found defendant guilty of the remaining sex offense counts 3 (§ 288, subd. (b)), 4 (§ 288(a)), 5 (§ 261, subd. (a)(2)), and 9 (§ 289, subd. (a)). Defendant was sentenced to an aggregate term of 24 years 8 months.

## DISCUSSION

### I. Corroborating Evidence Was Sufficient to Support Tolling

Pursuant to section 800, the applicable statute of limitations for each of the sex offenses alleged in counts 3, 4, 5 and 9 was six years.[5] Counts 3, 4, 5, and 9 were alleged to have occurred between 1991 and 1997, but the original felony complaint was not filed until April 21, 2017.

### A. Background

The prosecution alleged the statute of limitations period was tolled under section 803(f). The second amended information alleged Jane was under the age of 18 years at the time of the offenses, she reported the offenses on April 18, 2017 (after she was 21 years old), and the criminal complaint was filed within one year of that date. The information also alleged independent evidence corroborated Jane's allegations: (1) Jane's mother witnessed defendant in the vicinity of Jane's room completely naked; and (2) defendant possessed child pornography in violation of section 311.11.

Prior to trial, defendant pleaded no contest to the two child pornography offenses under section 311.11. Details about those convictions, including the nature and amount

---

[5] Pursuant to section 800, "[e]xcept as provided in Section 799, prosecution for an offense punishable by imprisonment in the state prison for eight years or more or by imprisonment pursuant to subdivision (h) of Section 1170 for eight years or more shall be commenced within six years after the commission of the offense."

of that pornography, were admitted under Evidence Code section 1108 as evidence of defendant's propensity to commit the earlier sex offenses and as evidence relevant to corroborate Jane's allegations under section 803(f)(2)(C).[6]

Following the bench trial, the court made the following findings: (1) Jane Doe was under the age of 18 years as it relates to counts 3, 4, 5, and 9; (2) Jane Doe first reported those sexual assault allegations to law enforcement on April 18, 2017; (3) a criminal complaint regarding those allegations was filed within one year of that report; and (4) each of the acts described in counts 3, 4, 5 and 9 involved substantial sexual conduct as defined in section 1203.066, subdivision (b).

As for the corroborating evidence requirement under section 803(f)(2)(C), the court found the prosecution satisfied its burden of proof. Specifically, the court concluded there was clear and convincing independent corroboration of Jane's allegations. The court found Karen's testimony about defendant being naked in Jane's bedroom on one occasion corroborated Jane's allegations of molestation; and defendant's subsequent possession of child pornography corroborated Jane's allegations in that it established defendant's later interest in prepubescent female children, and the acts depicted in that pornography corresponded to the acts alleged by Jane.

---

[6] Pursuant to Evidence Code section 1108, subdivision (a), "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." A sexual offense within the meaning of Evidence Code section 1108, subdivision (a), includes any conduct proscribed by Penal Code section 311.11, among other statutes. Notably, the plain language of Evidence Code section 1108 "does not limit evidence of uncharged sexual offenses to those committed *prior* to the charged offense." (*People v. Medina* (2003) 114 Cal.App.4th 897, 902.) Because Evidence Code section 1108 broadly refers to the "commission of another sexual offense," this "strongly suggests that evidence of an uncharged sexual offense committed after the charged offense is within the scope of [Evidence Code] section 1108." (*People v. Medina, supra*, at p. 902; see *People v. Cordova* (2015) 62 Cal.4th 104, 133 ["evidence of subsequent crimes may bear on a defendant's character at the time of the charged offense"].)

On appeal, defendant argues Karen's testimony and the subsequent child pornography possession evidence was insufficient to clearly and convincingly corroborate Jane's allegations; the statute of limitations, therefore, could not be tolled under section 803(f), and counts 3, 4, 5 and 9 must be reversed as time barred.

B.      **Corroboration Requirement Supported by Substantial Evidence**

1.      **Section 803**

If a pleading is barred by the applicable statute of limitations, the prosecution must allege facts that toll the limitation period.  (*People v. Crosby* (1962) 58 Cal.2d 713, 724.)  Pursuant to section 803(f), an expired statute of limitations period may be tolled under particular circumstances.  A criminal complaint may be filed within one year of a police report for certain sexual offenses, such as violations of section 288, 261, and 289, which are at issue here, that were committed against victims when they were less than 18 years old.  (§ 803, subd. (f)(1).)  For tolling to apply under these circumstances, the following criteria must be established:  (1) the limitations period specified in sections 800, 801, or 801.1, whichever is later, has expired (§ 803, subd. (f)(2)(A)); (2) the crime involved substantial sexual conduct as described in section 1203.066, subdivision (b), excluding masturbation that is not mutual (§ 803, subd. (f)(2)(B)); and (3) there is independent evidence that corroborates the victim's allegations (§ 803(f)(2)(C)).

If the victim is 21 years of age or older at the time of the report, section 803(f)(2)(C) states that "the independent evidence shall clearly and convincingly corroborate the victim's allegation."  Further, "[e]vidence shall not be used to corroborate the victim's allegation if that evidence would otherwise be inadmissible during trial" (§ 803, subd. (f)(3)), and "[i]ndependent evidence excludes the opinions of mental health professionals" (*ibid.*).

11.

## 2.    Standard of Review

"When a defendant argues on appeal that there was no independent evidence clearly and convincingly corroborating the victim's allegation, [the reviewing court's] task is to determine whether there is substantial evidence corroborating the allegations. [Citation.] '[T]he corroboration does not have to corroborate each allegation in the criminal pleading, only the "victim's allegation." (§ 803, subd. [(f)](2)(B).) … Further, the corroboration does not have to be sufficient to support a *conviction.*'" (*People v. Smith* (2011) 198 Cal.App.4th 415, 427–428, citing & quoting *People v. Ruiloba* (2005) 131 Cal.App.4th 674, 681, 683 (*Ruiloba*).)

To determine whether the record shows substantial evidence, "we apply the normal substantial evidence standard of review, regardless of the burden of proof in the trial court." (*Ruiloba, supra*, 131 Cal.App.4th at p. 682.) Under this standard, the evidence must be viewed in the light most favorable to the factfinder's findings. (*Ibid.*)

## 3.    Analysis

Defendant argues that, even crediting Karen's testimony that she found him naked in Jane's room on a single occasion, that fact is not sufficient to corroborate Jane's allegations because there was no evidence defendant harbored any lewd intent during that episode. Defendant contends the fact that he was naked, by itself does not support such an inference, and there was no evidence he had an erection or was touching Jane in a sexual manner. Rather, defendant maintains, the incident described by Karen is "completely consistent" with the normal concern a parent would have upon hearing a child and checking whether that child needed comforting.

Karen's testimony about defendant's naked appearance in Jane's bedroom when Jane was 10 or 11 years old significantly corresponds to Jane's allegations about how defendant abused her. Jane testified that when defendant sexually assaulted her, he would come into her room at night, and she would be awoken by him touching her. Jane had specific recollections of this occurring when she was 10 or 11 years old, while the

12.

family was living in the Villa Avenue apartment building. That Karen saw defendant, while they were living in the Villa Avenue apartment building, naked inside Jane's room in the middle of the night touching Jane's arm was fully consistent with how, where, and when Jane described defendant's abuse occurring.

Moreover, defendant's nudity on that occasion permitted a reasonable inference he harbored a lewd intent—particularly given Jane's age and the circumstances. Defendant was not merely walking around his home naked at night, as he suggests; rather, he was naked inside the bedroom of his pre-teen stepdaughter. A trier of fact could reasonably infer that, absent some dire emergency that precluded the opportunity to don any kind of clothing (of which there was no evidence), there would be no reason for defendant to be inside Jane's bedroom naked and touching her arm *other* than for a lewd intent.

The evidence of defendant's child pornography possession only strengthened the inference of lewd intent in the bedroom incident Karen witnessed, and it further corroborated Jane's allegations. Evidence of sexual misconduct admissible under Evidence Code section 1108 may be used to corroborate a victim's allegation and thereby satisfy section 803(f). (*Ruiloba, supra*, 131 Cal.App.4th at p. 682.) "'[T]he precise probative value to be accorded this evidence will depend on various considerations, such as the frequency of the [other] acts and their similarity and temporal proximity to the charged acts.'" (*Ibid*, quoting *People v. Yovanov* (1999) 69 Cal.App.4th 392, 404.)

Corroboration of the "victim's allegation" under section 803(f) to toll the statute of limitations "can, and often does, consist of a description of multiple instances of abuse, often spread over years of time in the case of resident child molesters .… To the extent an uncharged act shows a defendant's *propensity* to commit sexual offenses against a child, that can corroborate *all of the charged offenses* even if it does not *particularly* corroborate any specific offense." (*Ruiloba, supra*, 131 Cal.App.4th at p. 683.) "Evidence of a person's propensity to do what the victim has alleged corroborates the victim's allegation." (*Ibid.*, citing *People v. Mabini* (2001) 92 Cal.App.4th 654, 659.)

Defendant claims the child pornography possession offenses are too temporally attenuated and substantively different from the molestation offenses to constitute clear and convincing independent corroboration. Defendant points out the sex offenses occurred more than 20 years before the child pornography offenses, and he argues child pornography possession is not sufficiently similar to the child molestation offenses to show any type of propensity or corroborative link.

Child pornography is defined broadly under section 311.11(a) as any type of information, data or image that depicts a person under the age of 18 years old engaging in or simulating "sexual conduct" as that term is defined in section 311.4, subdivision (d). (§ 311.11(a).) Material covered under that umbrella would include images or video of two 17-year-old teenagers engaged in intercourse to toddlers engaged in sexual intercourse with adults. All child pornography uniformly victimizes the minor or minors involved—and often does so repeatedly, given vast proliferation of such materials via the internet. Yet, not all child pornography encompassed by section 311.11(a)'s definition involves an adult male lewdly and sexually touching, penetrating and orally copulating (or being copulated by) a female child under the age of 15 years—which is much of the child pornography defendant possessed. It was not just the fact of defendant's conviction for child pornography possession the factfinder had available to consider as corroborating evidence–there was significant evidence of the amount and nature of the child pornography defendant possessed.

The child pornography defendant possessed mirrored the types of offenses Jane alleged defendant committed against her. Defendant possessed child pornography that exclusively depicted female children under the age of 15 years, and many of the admitted images and videos depicted female children ages six to nine years old, either being vaginally penetrated by an adult male penis or the female child was orally copulating an adult male penis. Jane described instances of defendant placing his fingers inside her vagina, rubbing his penis on her vagina and inserting it, and orally copulating her, all

14.

when she was between the ages of 10 and 15 years old. The child pornography defendant possessed was highly consistent with the sex offenses against Jane in terms of the age and gender of the victims, the age (adult) and gender of the perpetrators (male), and the types of acts committed—vaginal penetration and oral copulation.

Due to these significant parallels, the child pornography possession offenses had strong corroborative value with respect to Jane's allegations. Defendant's reliance on *People v. Earle* (2009) 172 Cal.App.4th 372 does not persuade us differently. There, the court concluded a misdemeanor indecent exposure charge could not rationally support an inference the defendant had a propensity to commit a subsequent sexual assault. (*Id.* at pp. 396–400.) The court reasoned the two sex acts were different, and the "propensity to commit one kind of act cannot be supposed, without further evidentiary foundation, to demonstrate a propensity to commit a *different* act." (*Id.* at p. 399.)

Unlike the differences between indecent exposure and sexual assault at issue in *People v. Earle*, there is a recognized nexus between pedophilia and child pornography. (See *People v. Memro* (1995) 11 Cal.4th 786, 864–865 [possession of child pornography evidence of the defendant's intent to molest young boys], overruled on a different ground in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2; see also *United States v. Brand* (2d Cir. 2006) 467 F.3d 179, 201 ["Both Congress and at least one other court have concluded that possession of child pornography signals the abnormal sexual attraction to children underlying a person's motivation to commit sexual crimes against children."], abrogated on another ground by *United States v. Cabrera* (2021) 13 F.4th 140, 147.) Beyond defendant's admission to police officers, the child pornography affirmed defendant's sexual interest in children. (See, e.g., *United States v. Bentley* (N.D.Iowa 2007) 475 F.Supp.2d 852, 858 [difference between prior sexual assaults of children and current prosecution for possessing child pornography "are not as great as they might seem at first glance" because "[t]he child pornographer, like the child rapist, displays a sexual interest in children"].) That fact is relevant to the allegation that he sexually

15.

abused a child. Moreover, the pornography established defendant had sexual interest in watching adult men sexually abuse young female children in the same way Jane alleged defendant abused her. Defendant's sexual interest in those particular acts with victims of that particular age and gender is relevant to showing a propensity to have engaged in those acts with Jane when she was a child, and is substantial evidence corroborating Jane's allegations.

Defendant argues that while courts have found a nexus between the possession of child pornography and child molestation, such as in *People v. Memro, supra*, 11 Cal.4th at pages 864 to 865, that conclusion was reached in the context of those offenses occurring simultaneously or in close temporal proximity—which is not the case here. We acknowledge there was a significant time gap between the date of the sex offenses against Jane occurring between 1991 and 1997 and the child pornography offenses in 2017, but this does not vitiate the corroborating value of the child pornography possession offense evidence in this case.

As the People point out, section 803(f) places no time limits on the independent evidence to corroborate a victim's allegation for purposes of tolling. In the context of propensity evidence under Evidence Code section 1108, courts have frequently concluded any temporal remoteness of the propensity evidence does not obviate its relevance. (See *People v. Frazier* (2001) 89 Cal.App.4th 30, 41 [uncharged offenses 15 to 16 years earlier did not make those offenses irrelevant]; see also *People v. Cordova, supra*, 62 Cal.4th at p. 133 [affirming admissibility of subsequent sex offense convictions under Evid. Code, §§ 352 and 1108, and reasoning "[t]he fact that [the] defendant committed two sex offenses against young children *after* the crime in this case permits the logical conclusion that [the] defendant had a propensity to commit sex offenses against young children earlier in his life, even if years separated the crimes" (italics added)].) Defendant acknowledges courts have observed that significant similarities between past and current offenses may balance out or offset any temporal remoteness

16.

when considering admissibility under Evidence Code sections 352 and 1108.  (See *People v. Branch* (2001) 91 Cal.App.4th 274, 285.)  Likewise, the significant similarity between the nature of the child pornography defendant possessed and Jane's allegations had strong corroborative value and ameliorated the time gap between Jane's molestation allegations and the possession offenses.

Finally, the child pornography defendant possessed included 32 videos and nearly 300 photo images.  He had been accessing and viewing child pornography for about five years before his arrest.  The amount of pornography possessed and the years he accessed it support a reasonable inference defendant's sexual interest in young female children, which extended to sexual intercourse and penetration of young girls by adult men, was significant and long-standing.  Under these collective circumstances, the child pornography offenses constitute substantial evidence that is relevant, probative and corroborative of Jane's allegations.

Viewing the evidence in the light most favorable to the judgment, as we are required to do (*Ruiloba, supra*, 131 Cal.App.4th at p. 682), Karen's testimony and the child pornography possession evidence together constituted substantial evidence to corroborate Jane's allegations.  A rational trier of fact could conclude the prosecution met its burden of presenting substantial evidence that "clearly and convincingly" corroborated Jane's allegations (§ 803(f)(2)(C)).

## II.    Child Pornography Possession Offenses Under Section 311.11

### A.    Background

As noted, defendant pleaded no contest to counts 1 and 2 for possession of child pornography under section 311.11(a) and (c)(1), respectively.  The record suggests this was not a negotiated disposition, but rather an open plea.  The plea form indicates defendant was advised and acknowledged the maximum sentence that could be imposed for the two offenses was a prison term of five years, which the trial court reiterated during the plea colloquy.

Following trial, the court sentenced defendant on the convictions arising from trial and the two counts of child pornography possession to which defendant had pleaded no contest. Thereafter, defendant filed a notice of appeal, but he did not seek or obtain a certificate of probable cause regarding his no contest plea to counts 1 and 2.

Defendant argues section 311.11(c)(1), for which he was convicted under count 2, is an alternate penalty provision, not a substantive offense. He maintains only one conviction for child pornography was lawful, and he should have been sentenced under the alternate penalty provision for the single conviction.

## B. Certificate of Probable Cause

"The right to appeal is statutory only, and a party may not appeal a trial court's judgment, order or ruling unless such is expressly made appealable by statute." (*People v. Loper* (2015) 60 Cal.4th 1155, 1159; accord, *People v. Arriaga* (2014) 58 Cal.4th 950, 958; *People v. Totari* (2002) 28 Cal.4th 876, 881.) "In general, [however,] a defendant may appeal from a final judgment of conviction, unless otherwise limited by sections 1237.1 and 1237.5." (*People v. Maultsby* (2012) 53 Cal.4th 296, 298–299, citing § 1237 & Cal. Rules of Court, rule 8.304(b) (*Maultsby*).)

"Section 1237.5, which is at issue here, provides in full: 'No appeal shall be taken by the defendant from *a judgment of conviction upon a plea of guilty or nolo contendere*, or a revocation of probation following an admission of violation, except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court.' (Italics added.) The purpose of section 1237.5 is 'to weed out frivolous and vexatious appeals from pleas of guilty or no contest, before clerical and judicial resources are wasted.'" (*Maultsby, supra*, 53 Cal.4th at p. 299, fn. omitted, quoting

*People v. Buttram* (2003) 30 Cal.4th 773, 790; accord, *People v. Panizzon* (1996) 13 Cal.4th 68, 75–76 (*Panizzon*).)

Even if an appeal goes forward without a certificate of probable cause based upon claims that do not require one, the defendant may not raise additional claims that do require a certificate. (*People v. Mendez* (1999) 19 Cal.4th 1084, 1104.) Nevertheless, there are two types of issues that may be raised on appeal following a guilty or nolo contendere plea without the need for a certificate: issues relating to the validity of a search and seizure, for which an appeal is provided under section 1538.5, subdivision (m), and issues regarding proceedings held subsequent to the plea for the purpose of determining the degree of the crime and the penalty to be imposed. (*People v. Shelton* (2006) 37 Cal.4th 759, 766; *People v. Buttram, supra*, 30 Cal.4th at p. 780.)

## C.     Analysis

Despite his no contest plea, defendant claims he was improperly convicted on count 2 for child pornography possession under section 311.11(c)(1) because that subdivision does not state a substantive offense but is, rather, an alternate penalty provision. The People assert defendant's failure to obtain a certificate of probable cause under section 1237.5 precludes him from presenting this argument on appeal.

The certificate requirements of section 1237.5 are to "be applied in a strict manner." (*People v. Mendez, supra*, 19 Cal.4th at p. 1098.) To determine whether an appeal challenging a post-no contest plea sentence requires examining the substance of the claim on appeal: "the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made." (*People v. Ribero* (1971) 4 Cal.3d 55, 63, superseded by statute on other grounds as stated in *In re Chavez* (2003) 30 Cal.4th 643, 656.) In other words, the question "is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5." (*Panizzon, supra*, 13 Cal.4th at p. 76.)

In *Panizzon*, the defendant pleaded no contest as part of a plea agreement for a sentence of life with the possibility of parole, plus 12 years. (*Panizzon, supra*, 13 Cal.4th at pp. 73–74.) The defendant appealed without obtaining a certificate of probable cause, arguing that his sentence was disproportionate to what a codefendant received and was, thus, unconstitutional. While on its face the claim did not challenge the validity of the plea, "by contesting the constitutionality of the very sentence he negotiated as part of the plea bargain, [the] defendant is, in substance, attacking the validity of the plea." (*Id.* at p. 78.) The "sentence [the] defendant received was part and parcel of the plea agreement he negotiated with the People," and thus fell "squarely within the parameters of a challenge to the plea." (*Ibid.*)

In analyzing the substance of defendant's challenge here, which does not appear to involve a negotiated plea or sentence, *People v. Jones* (1995) 33 Cal.App.4th 1087 (*Jones*) is illustrative and persuasive. In *Jones*, the defendant entered an open no contest plea to all charged counts, including two counts for receiving and taking stolen property under section 496. (*Jones, supra*, at p. 1090.) While both counts under section 496 related to the same property, they were alleged separately because the property recovered belonged to two different victims. (*Jones, supra,* at p. 1090.) On appeal, the defendant argued her conviction had to be vacated because she could not be convicted of receiving the same property she had stolen during the burglary. (*Id.* at pp. 1090–1091.) The court concluded the defendant's claim that one of her section 496 convictions was unlawful was necessarily a challenge involving the validity of the plea and to challenge it on appeal required a certificate of probable cause under section 1237.5. (*Jones, supra*, at p. 1094.) The same is true here, as the People assert. At its core, defendant's argument is that his no contest plea on count 2 is invalid because he could not be lawfully convicted under section 311.11(c)(1).

Defendant argues *Jones* is distinguishable because it involved two substantive offenses unlike section 311.11(c)(1), which defendant argues is not a substantive offense

at all—it is an alternate penalty provision. However, defendant does not explain how that distinction alters the analysis or the result. Although for different reasons, the issue presented by defendant here is fundamentally the same as that in *Jones*–both involve claims of an assertedly unlawful conviction arising from a no contest plea. Just as in *Jones*, to assert the conviction under section 311.11(c)(1) is improper is necessarily a challenge to the validity of the plea on that count and requires a certificate of probable cause to pursue the claim on appeal.

Defendant compares his no contest plea under section 311.11(c) to the admission of an enhancement and cites *Maultsby* to argue such a challenge is cognizable without obtaining a certificate of probable cause. (*Maultsby, supra*, 53 Cal.4th 296.) In *Maultsby*, however, there was no plea of guilt or no contest at all. (*Id.* at p. 298.) The defendant was convicted by jury of a petty theft offense and admitted a prior felony conviction. (*Ibid.*) On appeal, the only issue the defendant raised related to his admission of the prior conviction allegation. (*Ibid.*) The Court of Appeal dismissed the appeal on the ground that section 1237.5 applied to an enhancement allegation admission and a certificate of probable cause was required. (*Maultsby, supra*, at p. 298.) The California Supreme Court granted review and reversed. (*Id.* at p. 305.) The high court explained section 1237.5 does not apply where a defendant does not plead guilty or nolo contendere, and an admission to a prior conviction allegation, by itself, is not analogous. (*Maultsby, supra*, at pp. 302–303 [admission of enhancement allegation, by itself, does not implicate § 1237.5].) Because the defendant had appealed from a judgment of conviction following a plea of *not guilty* on the underlying substantive charge, section 1237.5 was not implicated, and section 1237, subdivision (a), applied. (*Maultsby, supra*, at p. 300.) As section 1237, subdivision (a), does not impose any limitations on the subject matter of claims raised on appeal, the defendant's argument about his prior felony conviction enhancement was cognizable without a certificate of probable cause. (*Maultsby, supra*, at p. 300.)

Unlike *Maultsby*, the issue defendant raises involves a judgment of conviction arising from a no contest plea, and defendant's argument on appeal goes directly to the validity of that plea and conviction. Inasmuch as an admission of a prior conviction allegation (without any guilty or no contest plea on the underlying substantive charge) is not a procedural analogue of a guilty or no contest plea as explained in *Maultsby*, a no contest plea resulting in a conviction cannot be analytically recast as an admission to an enhancement/penalty provision allegation. Even if such an analogy were appropriate, it would require reaching the merits of defendant's claim—i.e., that section 311.11, subdivision (c), is, in fact, an alternate penalty provision. And, assuming defendant is correct on the merits, it would result in vacating the existing conviction under section 311.11(c)(1), which necessarily implicates the validity of the plea thereto.

Defendant also suggests a section 1237.5 certificate of probable cause is unnecessary when the issue on appeal is solely one of law. The cases defendant cites, however, do not involve section 1237.5; instead, both *People v. Hines* (1997) 15 Cal.4th 997 and *Hale v. Morgan* (1978) 22 Cal.3d 388 address the issue of waiver, noting a pure issue of law may be addressed on appeal even if the argument was not presented below. The application of section 1237.5 does not turn on the legal or factual nature of the appellate claim, but whether substantively the claim implicates the validity of the plea. (See *People v. Cuevas* (2008) 44 Cal.4th 374, 383–384 [certificate of probable cause required to present a purely legal challenge to the negotiated maximum sentence imposed as part of the plea bargain, implicating the validity of the plea itself].)

## III. Ineffective Assistance of Counsel Claim

With respect to the two convictions under section 311.11(a) and (c)(1), defendant argues his counsel's failure to identify the alternate penalty provision issue and move to consolidate the two offenses into a single offense prior to advising defendant to enter no contest pleas to both counts constitute ineffective assistance of counsel.

We have concluded defendant is precluded from disputing the validity of his conviction under section 311.11(c)(1) because he pleaded no contest to that charge and failed to obtain a certificate of probable cause under section 1237.5. Thus, we can address his claim of ineffective assistance of counsel only if that claim relates to "proceedings held subsequent to the plea for the purpose of determining the degree of the crime and the penalty to be imposed." (*Panizzon, supra*, 13 Cal.4th at p. 74.) Because his claim relates to his attorney's failure to consolidate the child pornography offenses before defendant entered a no contest plea, we cannot address it. (*People v. Richardson* (2007) 156 Cal.App.4th 574, 596 ["we are without power to address [the] defendant's ineffective assistance of counsel claim in the absence of a certificate of probable cause, and [the] defendant must pursue any such claim through a petition for writ of habeas corpus"].) This claim must be pursued by any rights defendant may have to relief through a petition for writ of habeas corpus.

## DISPOSITION

The judgment is affirmed.

MEEHAN, J.

WE CONCUR:

LEVY, Acting P. J.

POOCHIGIAN, J.

23.