Filed 1/24/24  P. v. Lepe-Puentes CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098142 |
| Plaintiff and Respondent, | (Super. Ct. No. 99F00620) |
| v. | |
| JUAN GABRIEL LEPE-PUENTES, | |
| Defendant and Appellant. | |

On October 25, 1998, 12-year-old V.L. disclosed to her brother that defendant Juan Gabriel Lepe-Puentes, her 24-year-old first cousin, had sexually assaulted her that day.  She subsequently gave a statement to law enforcement.  In January 1999, a complaint was filed charging defendant with five counts of forcible lewd and lascivious

1

conduct (Pen. Code, § 288, subd. (b)), and an arrest warrant was issued.[1]  However, defendant had moved to Mexico soon after he was informed of V.L.'s allegation.

In July 2022, defendant was detained on the arrest warrant in Texas after crossing the border from Mexico into the United States, and he was transported to California for prosecution.  V.L. was reinterviewed by law enforcement following defendant's arrest, and she disclosed for the first time that defendant had sexually abused her on multiple occasions between 1996 and 1998, in addition to the abuse she had previously disclosed.  The People filed a second complaint charging defendant with five counts of forcible lewd and lascivious conduct.  The two complaints were later combined in a consolidated information charging defendant with 10 counts.

A jury found defendant guilty of all 10 counts.  In bifurcated proceedings, the trial court found true four factors in aggravation.  The court noted two factors in mitigation, but it concluded the aggravating factors substantially outweighed the mitigating factors such that imposition of either the lower or middle terms would be contrary to the interest of justice.  (§ 1170, subd. (b)(6).)  It sentenced defendant to consecutive upper terms of eight years on each count, for a total of 80 years in prison.

On appeal, defendant claims:  (1) his federal and state constitutional rights to a speedy trial were violated due to the delay between the filing of the original complaint in 1999 and the commencement of trial in 2022; (2) the charges against him related to V.L.'s July 2022 disclosure were barred by the applicable statute of limitations, and the trial court erred by not instructing the jury about the statute of limitations; and (3) the court improperly found factors in aggravation to be true, failed to consider relevant factors in mitigation, and imposed a sentence constituting cruel and unusual punishment in violation of the federal and California Constitutions.  We affirm the judgment.

---

[1]  Further undesignated statutory references are to the Penal Code.

2

# FACTS AND PROCEEDINGS

*Factual Background*

V.L. often went to her cousin Vanessa's house to play. On October 25, 1998, 12-year-old V.L. and her 17-year-old brother, Arturo, were playing in a parking lot near the apartment complex where Vanessa and defendant, Vanessa's 24-year-old brother, lived. V.L. went into defendant's apartment by herself to use the bathroom; she did not think anyone was home. Defendant was there and grabbed V.L. by the arm, pulled her into his parents' bedroom, kissed her, touched her breasts and genitals, removed her clothes, and had oral and vaginal sex with her. Defendant was startled by a noise, and he pulled up his pants and left the apartment.

V.L. ran to the front door of the apartment and got dressed; she saw defendant run away from the apartment. She went back out to the parking lot to play with Arturo and Vanessa; they each testified that V.L. had been in the apartment for approximately 15 minutes.

V.L., Arturo, and Vanessa walked to a nearby store. Vanessa testified at trial that V.L. appeared "[s]erious" and "[q]uiet" when she came out of the apartment, or as if she was "thinking of something." She did not recall that V.L. appeared nervous, although she acknowledged that she told a police officer at the time of the incident that V.L. appeared nervous and that she "wonder[ed] about something being a little bit off" when V.L. came out of the apartment.

Arturo noticed that V.L., who was characteristically happy and joyful before going into the apartment, had become quiet and unhappy and "seemed like squashed inside." While Vanessa was in the store, Arturo asked V.L. what was wrong. V.L. burst into tears and immediately said that defendant had raped her. V.L. testified that she was scared to speak up, but she disclosed defendant's assault to Arturo because she "couldn't hold it anymore." When Vanessa came out of the market, Arturo explained to her what had happened. Vanessa recalled that V.L. also told Vanessa that defendant tried to rape her.

3

According to V.L., Arturo went to their aunt's house to find someone to pick her up from the store, and her aunt picked V.L. up and brought her to her aunt's house. Arturo recalled that he brought V.L. to their aunt's apartment, where he told the family what happened and called the police.

Vanessa went looking for defendant and found him at a park. She told him that V.L. had accused him of rape and that law enforcement had been contacted, and she advised him to run away because the family "wanted to kill [him]." She testified that defendant told her he had been in his parents' bedroom and that V.L. had come into the room, but nothing happened.

V.L. gave a statement to a police officer that same day. The officer taking V.L.'s statement noticed that she appeared to be upset, her voice quivered as she spoke, and she sometimes cried. V.L. did not disclose any other instances of abuse at that time. Law enforcement searched for defendant but did not find him.

On January 8, 1999, V.L. participated in an interview at a multi-disciplinary interview center (MDIC).[2] A report prepared by a detective who observed the interview reflected that V.L. "became visibly upset, was crying, and spoke very rapidly" as she described defendant's assault.

On January 25, 1999, the People filed a complaint charging defendant with five counts of forcible lewd and lascivious acts (§ 288, subd. (b)) against V.L in case No. 99F00620,[3] and an arrest warrant was issued.

---

[2] "The MDIC is a facility specially designed and staffed for interviewing children suspected of being victims of abuse." (*People v. Sisavath* (2004) 118 Cal.App.4th 1396, 1400.)

[3] The complaint alleged that the offenses occurred between October 1 and November 30, 1998.

*Defendant's Arrest, New Allegations, and Consolidated Information*

More than 23 years later, on July 12, 2022, defendant was taken into custody on the warrant by Customs and Border Patrol after crossing into the United States from Mexico. On July 19, two detectives from the Sacramento Police Department traveled to Texas to collect defendant.

In July 2022, following defendant's arrest, V.L. was reinterviewed by law enforcement. For the first time, she disclosed that defendant had sexually abused her on multiple occasions from 1996 to 1998. At trial, V.L. testified that when she went to Vanessa's house to play, defendant would summon her out of Vanessa's bedroom into the hallway, put his hands between her legs, and rub her vagina over and underneath her clothing. This occurred more than 10 times between 1996 and 1998.

On August 3, defendant was arraigned on the complaint in case No. 99F00620, and pleaded not guilty to all charges. On August 16, following a preliminary hearing, he was held to answer on the charges, and the case was certified to superior court.[4] He was arraigned on September 1.

On August 22, and based on V.L.'s July 2022 disclosure of defendant's abuse, the People filed a complaint in case No. 22FE013949, which charged defendant with five counts of forcible lewd and lascivious acts against V.L. between January 1, 1996, and October 25, 1998. (§ 288, subd. (b)(1).) On September 9, following a preliminary hearing, defendant was held to answer on the charges.

At the preliminary hearing in case No. 22FE013949, the court granted the prosecution's request to consolidate the two cases, and a consolidated information was

---

[4] A police officer testifying at the hearing confirmed that the assault was reported on October 25, 1998, the same day it occurred. Based on that testimony, the trial court amended the information to allege that the offenses occurred between October 1 and November 30, 1998.

5

filed. Counts one through five of the consolidated information charged defendant as he was previously charged in case No. 99F00620. Counts one through five in case No. 22FE013949 were renumbered as counts six through ten in the consolidated information.

The consolidated information alleged four factors in aggravation: the crimes involved great violence, great bodily harm, threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1))[5]; the victim was particularly vulnerable (rule 4.421(a)(3)); the manner in which the crimes were carried out indicates planning, sophistication, or professionalism (rule 4.421(a)(8)); and defendant took advantage of a position of trust (rule 4.421(a)(11)). Defendant was arraigned on the consolidated information and pleaded not guilty to all the charges and allegations.

*Defendant's Trial Testimony*

Jury trial commenced on November 18, 2022. Testifying in his defense, defendant denied touching V.L. or any other young girls inappropriately. He characterized V.L. as "loose," which he defined as "already having relations with other men," and asserted that she was sexually active with men in her family, although he testified that V.L. had never acted flirtatiously or "loose" with him. He acknowledged he was home alone after work on the day of the alleged sexual assault, and he had been alone with V.L. in the apartment. He claimed that V.L. jumped on him or sat on his lap and tried to kiss him and hug him in a sexual way, but that he rejected her and removed her from his lap. He testified that this conduct was something other than "flirtatious" or "loose" behavior.

Defendant also testified that after Vanessa informed him of V.L.'s allegation, he responded that she should go to the doctor to substantiate her allegation and that he would answer for the charges if there was proof he had assaulted her. Vanessa told him

---

[5] Further undesignated rule references are to the California Rules of Court.

6

to leave because the family wanted to beat him up, and he did. He also asserted that he had planned to leave for Mexico to prepare to get married before he learned of V.L.'s allegations, although he was not yet engaged, had not discussed proposing with his family, and did not marry until 2000. He stayed at his aunt's house for a week before leaving for Mexico; although he did not plan on ever returning to the United States, he did not tell his family he was leaving. He attributed that decision to his fear that his family would beat him up, his distaste for goodbyes on the basis that he and his mother would become too emotional, and the fact that he was not very close to his brothers.

*Verdict and Sentence*

The jury found defendant guilty as charged in counts one through ten. Defendant waived his right to a jury trial on the factors in aggravation, and the trial court found the alleged aggravating factors true beyond a reasonable doubt based on the evidence adduced at trial.

At sentencing, the trial court noted the factors in mitigation that defendant had an insignificant criminal record outside of the current case (rule 4.423(b)(1)) and that he was under the age of 26 at the time of the charged offenses (rule 4.423(b)(6)), although it observed there was no evidence that defendant's age contributed to the commission of the offenses. The court concluded that the aggravating factors substantially outweighed the mitigating factors such that imposition of either the lower or middle terms would be contrary to the interest of justice. (§ 1170, subd. (b)(6).) It sentenced defendant to consecutive upper terms of eight years on each count.

Defendant timely appealed. The case was assigned to the current panel in late October 2023.[6]

_____

[6] The case was assigned to the panel following defendant's failure to timely file a reply brief. Appellate counsel subsequently requested an extension of time to file the reply

7

**DISCUSSION**

**I**

*Speedy Trial*

Defendant contends the lengthy delay between the filing of the initial complaint in 1999 and trial thereon violated his federal and state constitutional rights to a speedy trial. We disagree. With respect to the federal claim, the right attached upon defendant's arrest in July 2022--not upon the filing of the complaint in 1999, as defendant claims--and therefore the delay between defendant's arrest and the beginning of trial in November 2022 was not presumptively prejudicial. As for the state claim, it is forfeited because defendant failed to object and file a motion to dismiss in the trial court, and he fails to establish ineffective assistance of counsel.

A. *Legal Background*

Both the federal and California constitutions guarantee criminal defendants the right to a speedy trial (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15, cl. 1), and both guarantees operate in state criminal prosecutions (*People v. Martinez* (2000) 22 Cal.4th 750, 754 (*Martinez*)).[7] However, the federal and state constitutional rights differ in when they attach, the showing required to obtain dismissal for violation of the right, and whether the right can be waived.

"Under the *state* Constitution, the filing of a felony complaint is sufficient to trigger the protection of the speedy trial right. [Citations.] Under the *federal* Constitution, however, the filing of a felony complaint is by itself insufficient to trigger

---

brief on the basis that he had not received the respondent's brief; we granted that request. Counsel filed the reply brief on November 30, 2023.

[7] Additionally, "[t]he statutory speedy trial provisions, . . . sections 1381 to 1389.8, are 'supplementary to and a construction of' the state constitutional speedy trial guarantee." (*Martinez, supra*, 22 Cal.4th at p. 766.) Defendant does not contend that there was any statutory delay that would give rise to a presumption of prejudice here.√

speedy trial protection. [Citation.] The United States Supreme Court has defined the point at which the federal speedy trial right begins to operate: '[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.' " (*Martinez*, *supra*, 22 Cal.4th at pp. 754-755.)

To obtain dismissal under the federal speedy trial right, the high court has articulated a balancing test requiring the court to evaluate four factors: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." (*Doggett v. United States* (1992) 505 U.S. 647, 651, citing *Barker v. Wingo* (1972) 407 U.S. 514, 530.) The defendant bears the burden of demonstrating a speedy trial violation under this four-factor test. (*People v. Williams* (2013) 58 Cal.4th 197, 233.)

To demonstrate an "uncommonly long" delay before trial, a defendant must allege that the interval between the attachment of the right and trial "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, [citation], since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." (*Doggett v. United States*, *supra*, 505 U.S. at pp. 652-653.) Courts have refused to quantify the right into a specified number of days or months, recognizing that the speedy trial right is " ' "amorphous," "slippery," and "necessarily relative." ' " (*People v. Williams*, *supra*, 58 Cal.4th at p. 233.) However, the high court has noted that courts have generally found delays approaching one year to be " 'presumptively prejudicial.' " (*Doggett*, at p. 652, fn. 1.) Because an uncommonly long delay triggers a presumption of

9

prejudice, a defendant can establish a federal speedy trial right claim without an affirmative showing of prejudice.  (*Martinez*, *supra*, 22 Cal.4th at p. 755.)

Conversely, under the state speedy trial right, "no presumption of prejudice arises from delay after the filing of a complaint and before arrest or formal accusation by indictment or information."  (*Martinez*, *supra*, 22 Cal.4th at p. 755.)  Instead, a defendant seeking dismissal under the state speedy trial right "must affirmatively demonstrate prejudice."  (*Ibid.*, citing *Serna v. Superior Court* (1985) 40 Cal.3d 239, 249.)  If the defendant demonstrates prejudice, the burden shifts to the prosecution to justify the delay, and the trial court will then weigh the prejudice against the justification to determine whether the defendant's ability to defend has been impaired and the right to a speedy trial violated.  (*People v. Lowe* (2007) 40 Cal.4th 937, 942, citing *Serna*, at p. 249.)

Finally, "state speedy trial rights 'will be deemed waived unless the defendant *both* objects to the date set [for trial] *and* thereafter files a timely motion to dismiss.' [Citation.]  The same is not true of the federal constitutional right to a speedy trial.' " " '[A] defendant's mere silence in the face of a continuance does not waive the [federal] constitutional right to speedy trial.' "  (*People v. Bradley* (2020) 51 Cal.App.5th 32, 39, disapproved of on other grounds in *Camacho v. Superior Court* (2023) 15 Cal.5th 354, 392, fn. 8.)  However, with respect to the federal right, the United States Supreme Court has clarified that while the courts and prosecutors have the "primary burden" to assure that cases are brought to trial, "[w]e hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine."  (*Barker v. Wingo*, *supra*, 407 U.S. at p. 529.)

B.  *Federal Claim*

Defendant claims that the lengthy delay between the filing of "an information" in 1999 and the beginning of trial in 2022 violated his federal speedy trial right.  He asserts that "[t]he filing of a felony complaint, to wit, an information, triggers the protection of speedy trial rights."  But as we have discussed, the distinction between a *felony complaint*

10

and an *information* is an important one.  A defendant's federal speedy trial right is triggered by a "formal accusation in the court with jurisdiction over the prosecution of the charge" (*Martinez, supra,* 22 Cal.4th at p. 763), or "arrest with continuing restraint" on such charge.  (*Id.* at p. 765; accord, *People v. Horning* (2004) 34 Cal.4th 871, 891.)  The filing of a felony complaint in state court does not trigger the federal speedy trial right because it is not a document upon which a defendant may be subjected to trial.  (*Martinez,* at pp. 761, 763.)  Instead, a felony complaint "invokes the authority of a magistrate, not that of a trial court," and "functions to bring the defendant before a magistrate for an examination into whether probable cause exists to formally charge him with a felony."  (*Id.* at p. 763.)  "Only if probable cause exists may an information invoking the trial jurisdiction of the superior court be filed."  (*Ibid.*)  Thus, a pleading only constitutes a formal accusation for purposes of the Sixth Amendment when "a defendant may be brought to trial in the court with jurisdiction over prosecution of the offenses alleged"; i.e., an information or indictment.  (*Id.* at p. 76.)  Further, the Sixth Amendment speedy trial right does not attach upon the filing of an arrest warrant after the filing of a felony complaint.  (*Id.* at pp. 764, 765.)

Here, a felony *complaint* was filed on January 25, 1999, and an arrest warrant issued on that same day.  However, defendant's federal speedy trial right did not attach until he was arrested on the warrant on July 12, 2022.  Thus, there was a delay of approximately four months--not 23 years, as defendant claims--between the attachment of the federal speedy trial right in case No. 99F00620 and the start of his trial on November 18, 2022.  Defendant does not argue that a four-month delay was presumptively prejudicial.  Because he does not allege a prejudicial delay between the attachment of the right and commencement of his trial, his federal speedy trial claim fails.

C.  *State Claim*

Defendant claims a violation of his state constitutional speedy trial right.  But he did not object to the date set for trial or file a motion to dismiss in the trial court, and

11

therefore we agree with the Attorney General that defendant waived his state speedy trial right.  (*People v. Bradley*, *supra*, 51 Cal.App.5th at p. 39.)

Relying on *People v. Tully* (2012) 54 Cal.4th 952, defendant contends that his claim may be raised for the first time on appeal.  In *Tully*, the court concluded that constitutional claims raised for the first time on appeal are not subject to forfeiture when " 'the new arguments do not invoke facts or legal standards different from those the trial court itself was asked to apply, but merely assert that the trial court's act or omission, insofar as wrong for the reasons actually presented to that court, had the additional legal consequence of violating the Constitution.' "  (*Id.* at pp. 979-980.)  *Tully* is inapt because defendant's claim on appeal clearly invokes facts and legal standards different from those the trial court was asked to apply.  Specifically, the trial court was not asked to conduct a fact-intensive inquiry into whether defendant's right to a speedy trial was violated, and it was not asked to balance the prejudice to defendant caused by the delay against the prosecution's justification therefor.

Anticipating our conclusion, defendant contends his trial counsel was constitutionally ineffective because he "should have considered a *Serna* motion," or a motion to dismiss for violation of the right to a speedy trial and on due process grounds. (See *Serna v. Superior Court*, *supra*, 40 Cal.3d at p. 238.)

To establish a claim of ineffective assistance of counsel, defendant must prove that (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to defendant.  (*People v. Maury* (2003) 30 Cal.4th 342, 389.)  Prejudice is shown where there is "a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)  "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance.  It

is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Ibid.*)

At the outset, defendant argues only that trial counsel was constitutionally ineffective for failing to *consider* filing a motion to dismiss. There is nothing in the record to suggest that trial counsel did not *consider* filing such a motion, and defendant's claim fails on that basis alone.

Further, the record sheds no light on why counsel failed to file a motion to dismiss, and we see satisfactory explanations for not filing one. For example, counsel could have determined that delay in prosecution was likely justified by defendant's flight to avoid prosecution. (See *People v. Perez* (1991) 229 Cal.App.3d 302, 308 ["a defendant who flees the jurisdiction of a court for the purpose of avoiding prosecution waives the right to a speedy trial"]; *People v. Garcia* (2014) 223 Cal.App.4th 1173, 1178 [quoting *Perez*].) Or counsel could have determined that defendant was not prejudiced by the delay because his ability to defend against the charge had not been impaired. (See *People v. Lowe*, *supra*, 40 Cal.4th at p. 945 [defendant asserting violation of state speedy trial right must show that delay has impaired the ability to defend against the charged crime].) We cannot conclude that counsel's performance was deficient where he was not asked to explain why he did not file a motion to dismiss, and where the record reveals potential satisfactory explanations for his conduct.

13

## II

### *Statute of Limitations*

Defendant contends prosecution for counts six through ten was time-barred.[8] The parties agree that the statute of limitations set forth in section 801.1 expired before prosecution as to those counts commenced. Thus, the issue before us is whether counts six through ten fell within the tolling provision contained in section 803, subdivision (f), which allows the filing of a complaint within one year of the date of a person's report to law enforcement that the person was the victim of a specified sex offense while under 18 years of age. The dispute between the parties centers on section 803, subdivision (f)'s requirement that independent evidence corroborate the allegation. As we will explain, the record demonstrates that the requirements of section 803, subdivision (f) are satisfied here.

Relatedly, defendant claims that the trial court failed to instruct the jury that counts six through ten were required to be corroborated by independent evidence. Alternatively, he claims trial counsel was constitutionally ineffective for failing to request such an instruction. As we next explain, we reject these claims as well.

A. *Standard of Review*

Defendant did not raise the statute of limitations at trial. Nevertheless, "when the charging document indicates on its face that the action is time-barred, a person convicted of a charged offense may raise the statute of limitations at any time," including on appeal, absent an express waiver. (*People v. Williams* (1999) 21 Cal.4th 335, 341; *id.* at p. 338

---

[8] While defendant does not expressly limit this claim to counts six through ten, he does not argue that prosecution for counts one through five was time-barred. Because a complaint was filed and an arrest warrant issued on January 25, 1999, it was not. (See § 804, subd. (d) [prosecution commences upon issuance of arrest warrant naming defendant with particularity];√ *People v. Simmons* (2019) 210 Cal.App.4th 778, 789 [statute of limitations begins to run from earliest date the offense could have potentially been committed].)√

[the defendant can raise statute of limitations argument at any time absent express waiver].)  Where the statute of limitations is raised for the first time on appeal, we review the record to determine whether it establishes that the action is not time-barred.  (*Id.* at p. 341.)  If the record establishes that the action is not time-barred, the conviction may stand despite the prosecution's error in filing an information that appeared to be time-barred.  (*Ibid.*)  On the other hand, if we cannot determine from the record whether the action is barred, we will remand for a hearing.  (*Ibid.*; see *People v. Smith* (2002) 98 Cal.App.4th 1182, 1193 (*Smith I*) [if statute of limitations is raised for the first time on appeal, we review the record or, if necessary, remand to the trial court for factual findings].)  In determining whether there are facts to show a prosecution is timely, we may review facts presented at the preliminary hearing or trial.  (*Smith I*, at p. 1191.)

  B.  *Section 803, Subdivision (f)*

   Pursuant to section 800, the statute of limitations applicable to each charged offense at the time it was committed was six years.  (See former § 288, subd. (b); Stats. 1995, ch. 890, § 1 [violation of § 288, subd. (b) punishable by up to eight years].)  The complaint alleged that counts six through ten occurred as early as January 1, 1996, and therefore prosecution was required to commence on or before January 1, 2002. (*People v. Simmons*, *supra*, 210 Cal.App.4th at p. 789 [statute of limitations begins to run from earliest date the offense could have potentially been committed].)  Before the limitations period expired (see *Stogner v. California* (2003) 539 U.S. 607, 632 [state may extend statute of limitations for prosecutions not yet time barred]), a series of legislative changes extended the limitations period to allow prosecution for violations of section 288 against victims younger than 18 years old to commence any time before the victim's 28th birthday.[9]  But while those legislative changes extended the limitations period in this case

_____

[9]  Effective January 1, 2001, the Legislature added subdivision (h)(1) of former section 803, which extended the statute of limitations applicable to the charged offenses to 10

15

to V.L.'s 28th birthday in December 2013, the information was not filed, and defendant was not arraigned on the information, until September 2022. (§ 804 [prosecution commences when information is filed, or defendant is arraigned].) Accordingly, the parties agree, as do we, that the statute of limitations under section 801.1 had long expired at the time prosecution of counts six through ten commenced.

Section 803, subdivision (f) extends the statute of limitations to allow the filing of a criminal complaint within one year of a person's report to law enforcement that they were the victim of a violation of section 288 while under 18 years of age. For section 803, subdivision (f) to apply, the following conditions must also be met: (1) the limitation period has expired; (2) the crime involved "substantial sexual conduct"; and (3) if the victim was 21 years old or older at the time of the report, there is independent evidence "clearly and convincingly" corroborating the victim's allegation.[10] (§ 803, subd. (f)(2).)

Here, defendant contends only that section 803, subdivision (f)'s independent evidence requirement was not satisfied.[11]

---

years. (Former § 803, subd. (h)(1); Stats. 2000, ch. 235, § 1; former § 290, subd. (a)(2)(A); Stats. 2000, ch. 649, § 2.5.) Effective January 1, 2005, the 10-year statute of limitations was moved to former section 801.1. (Stats. 2004, ch. 368, § 1.) Before the 10-year statute of limitations expired on January 1, 2006, section 801.1, subdivision (a) was amended to allow prosecutions under section 288 to commence any time before the victim turns 28 years old. (Stats. 2005, ch. 479, § 2.) In 2019, section 801.1 was amended to extend the statute of limitations to allow prosecutions to commence before the victim turns 40 years old (stats. 2018, ch. 1494, § 78), but the statute of limitations had already expired by the time of that amendment.√

[10] The corroborating evidence must be otherwise admissible, and the evidence cannot be the opinion of a mental health professional. (§ 803, subd. (f)(3).)√

[11] Section 803, subdivision (f)'s other requirements are clearly satisfied. V.L. was younger than 18 years old when the crimes were alleged to have occurred; the complaint was filed well within one year from the date of V.L.'s report to law enforcement; the face of the complaint indicated that it was filed after V.L.'s 28th birthday and therefore was

16

At the outset, we observe that the "allegation" that must be clearly and convincingly corroborated by independent evidence is the allegation made by the victim to a law enforcement agency that formed the basis for the counts otherwise barred by the statute of limitations. (§ 803, subd. (f)(1); *People v. Mabini* (2011) 92 Cal.App.4th 654, 657.) In other words, the evidence clearly and convincingly corroborating a victim's allegation must be independent only of the victim's report to a law enforcement agency; it does not need to be independent of, for example, any previous allegation the victim may have made about the defendant regarding other conduct, or testimony from other witnesses about the victim's statements and conduct.

Additionally, the independent evidence does not need to corroborate each allegation in a criminal pleading, only the "victim's allegation," and it "does not have to be sufficient to support a *conviction*.' " (*People v. Smith* (2011) 198 Cal.App.4th 415, 427-428 (*Smith II*); see *People v. Ruiloba* (2005) 131 Cal.App.4th 674, 683 [each specific act alleged against a defendant need not be corroborated].) Instead, the corroborating evidence need only connect the defendant to the commission of the crimes charged. (*Ruiloba*, at p. 682.) Thus, independent evidence corroborated a victim's allegation where evidence obtained in a pretext call led to an inference that there were *any* sexual acts with the victim, demonstrating the defendant's lewd disposition toward the victim. (*Id.* at pp. 687-688.) And evidence of an uncharged act showing a defendant's propensity to commit sexual offenses against a child can corroborate all of the charged offenses, even if it does not particularly corroborate any specific offense. (*Id.* at p. 683, *People v. Mabini*, *supra*, 92 Cal.App.4th at pp. 657-659; *People v. Yovanov*, *supra*, 69 Cal.App.4th

---

time-barred (§ 801.1); and V.L.'s allegation involved substantial sexual conduct (see § 1203.66, subd. (b) ["masturbation of either the victim or the offender" is "substantial sexual conduct"]; *People v. Dunn* (2012) 205 Cal.App.4th 1086, 1098, fn. 8 ["Masturbation encompasses any touching or contact, however slight, of the genitals of the victim or the offender done with the intent to arouse the sexual desires of the victim or the offender"]).

17

at p. 404-405.)  Where other acts evidence is used to corroborate an allegation, "the precise probative value to be accorded this evidence will depend on various considerations, such as the frequency of the uncharged acts and their similarity and temporal proximity to the charged acts." (*Yovanov*, at p. 404.)

C. *Analysis*

Defendant contends no independent evidence corroborated V.L.'s July 2022 allegation that he sexually abused her on multiple occasions between 1996 and 1998, as charged in counts six through ten.  In making this claim, he contrasts the absence of independent evidence corroborating V.L.'s July 2022 allegation with what he acknowledges is independent evidence clearly and convincingly corroborating V.L.'s allegation that he sexually assaulted her on October 25, 1998.[12]  However, as we have just discussed, evidence leading to an inference that there was *any* sexual contact between defendant and V.L. can corroborate her allegation of other instances of abuse. (*People v. Ruiloba*, *supra*, 131 Cal.App.4th at pp. 687-688 [evidence leading to an inference that there were *any* sexual acts with the victim corroborates victim's allegation].)  More generally, the independent evidence corroborating an allegation needs only to connect the defendant to the commission of the alleged crimes; it does not need to corroborate each specific act alleged. (*Id.* at pp. 682, 683.)  Thus, independent evidence leading to an inference that defendant sexually assaulted V.L. on one occasion can corroborate her allegation that he abused her on other occasions.  And here the independent evidence

---

[12]  We understand defendant's argument to be an effort to draw a contrast between the state of the corroborating evidence, not an argument that independent evidence was required to support the assault allegation charged in counts one through five.  No independent evidence was required to corroborate V.L.'s allegation as to that assault because the complaint related to that allegation was filed within the six-year statute of limitations set forth in section 800.

showed that defendant's October 25, 1998, assault occurred in the same location and close in time to the other assaults alleged.

As defendant implicitly acknowledges, abundant independent evidence leads to the inference that he sexually assaulted V.L. on October 25, 1998. Vanessa and Arturo each testified that V.L. was in the apartment at the time of the alleged assault for approximately 15 minutes. Vanessa observed that V.L. appeared "[s]erious" and "[q]uiet" when she came out of the apartment, and she told a police officer at the time of the incident that V.L. appeared nervous and that she wondered about something "being a little bit off" when V.L. left the apartment. For his part, Arturo noticed that V.L.'s demeanor had changed when she returned from the apartment; she had previously been happy and joyful but had become unusually quiet and unhappy. When he asked her what happened, V.L. began to cry and disclosed that defendant had raped her. Vanessa also recalled that V.L. had told her that defendant tried to rape her. Arturo reported defendant's assault to law enforcement.

Soon after her initial disclosure to Arturo, V.L. gave a statement to a police officer in which she recounted the assault; the officer noted that V.L. appeared to be upset, her voice quivered as she spoke, and she cried. In January 1999, V.L. again recounted the assault during an MDIC interview; a report of the interview reflected that V.L. was visibly upset, crying, and speaking very rapidly.

Additionally, after Vanessa informed defendant of V.L.'s allegation, he did not return to the apartment where the assault occurred, but rather left abruptly for Mexico, where he lived for the next 23 years. Although he testified that he left the United States because he was afraid that his family would beat him up due to V.L.'s allegations, he also testified that he, by pure coincidence, had preexisting plans to move to Mexico to propose to his girlfriend and get married. He acknowledged that he did not tell anyone in his family about his plans to move to Mexico.

19

The jury was instructed with CALCRIM No. 372 as follows: "If the defendant fled immediately after the crime was committed or after he was accused of committing the crime, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you decide the meaning and importance of that conduct. However, evidence that the defense fled or tried to flee cannot prove guilt by itself." In the related context of corroboration of accomplice testimony, " '[f]light tends to connect an accused with the commission of an offense and may indicate that an accomplice's testimony is truthful. [Citations.] As such, the flight of one who knows he is suspected of committing a crime may be sufficient to corroborate the testimony of an accomplice.' " (See *People v. Felton* (2004) 122 Cal.App.4th 260, 272.) Our Supreme Court has recognized: "[E]vidence of defendant's flight after the crimes were committed supports an inference of consciousness of guilt and constitutes an implied admission, which may properly be considered as corroborative of the accomplice testimony." (*People v. Williams* (2013) 56 Cal.4th 630, 679.)

We recognize that there was no express finding that defendant fled to Mexico to avoid prosecution, and thus we cannot conclude that evidence of defendant's sudden move to Mexico constitutes clear and convincing evidence, on its own, that defendant assaulted V.L. However, we note that a reasonable jury could have found unconvincing defendant's claim that he coincidentally had preexisting plans to move to Mexico on the same day that he was accused of sexually assaulting his young cousin, especially given the fact that he did not tell anyone in his family about his impending move.

Finally, we recognize that defendant denied sexually assaulting V.L. However, he acknowledged that he had been alone with V.L. in the apartment on the date the assault was alleged to have occurred and testified that V.L. had initiated sexual contact with him by jumping into his lap, hugging him, and trying to kiss him on the face and mouth. Thus, although defendant denied initiating sexual contact with V.L., his testimony

20

corroborated V.L.'s claim that she had been alone with him and that some sexual contact had occurred between them.

Combined, evidence of V.L.'s behavior on the date of the assault, her disclosures to Arturo, Vanessa, and law enforcement, her MDIC interview, evidence of defendant's flight, and the corroborative aspects of defendant's testimony led to an inference that defendant had a lewd disposition toward V.L. and sexually assaulted her in the same location and around the same time as the acts alleged in V.L.'s July 2022 disclosure. Independent evidence showing that defendant committed a similar sexual crime against the same victim, in the same location, and around the same time as the alleged acts clearly and convincingly corroborates V.L.'s allegation of other instances of abuse.

Because independent evidence clearly and convincingly corroborated V.L.'s allegation of abuse occurring between 1996 and 1998, the statute of limitations was extended under section 803, subdivision (f), and the prosecution was not time-barred.

D. *Instructional Error Claim*

On appeal, defendant claims for the first time that the trial court erred by failing to instruct the jury about the independent corroboration requirement, and instead instructing the jury pursuant to CALCRIM No. 1190 that "[c]onviction of a sexual assault crime may be based on the testimony of a complaining witness alone."[13] But "[a]s a general rule, the trial court need only instruct on the statute of limitations when it is placed at issue by the defense as a factual matter in the trial. [Citations.] To hold otherwise would render moot the discussion in [*People v. Williams*, *supra*, 21 Cal.4th 335] as to whether the defendant may raise a statute of limitations claim for the first time on appeal. If the trial

_____

[13] The trial court also instructed with CALCRIM No. 301 as follows: "The testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence." Defendant does not claim on appeal that the court erred in giving CALCRIM No. 301.

21

court has a sua sponte duty to instruct on the statute of limitations, even if factually not placed at issue by the defendant at trial, there would never have been an issue as to forfeiture of the right to raise the statute of limitations for the first time on appeal; the claim always would be preserved under the rubric of instructional error for failure to give a required instruction sua sponte.  As the court clarified in *Williams*, when an appellate court is reviewing a statute of limitations question after a conviction for the charged offenses, the proper question is whether the record demonstrates that the crime charged actually fell within the applicable statute of limitations." (*Smith I*, *supra*, 98 Cal.App.4th at pp. 1192-1193.)  Accordingly, "because defendant did not request jury instructions on the statute of limitations issues, he cannot argue on appeal that jury instructions should have been given." (*Smith II*, *supra*, 198 Cal.App.4th at p. 425.)  "The proper challenge for defendant to make now is not that the court failed to instruct but, rather, that he has the right to raise the issue for the first time on appeal, pursuant to *Williams*, which we have addressed above." (*Smith I*, at p. 1193.)

In the alternative, defendant contends that trial counsel was constitutionally ineffective for failing to request an instruction on the statute of limitations.  But there is no reasonable probability that the outcome of his trial would have been different if he had requested such an instruction because, as we have concluded, independent evidence clearly and convincingly corroborated V.L.'s allegation.  (See *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1010-1011 [ineffective assistance claim rejected because defendant failed to establish prejudice].)

III

*Sentencing*

Defendant contends insufficient evidence supported the trial court's findings regarding factors in aggravation, and the court impermissibly failed to consider certain mitigating factors.  He also argues for the first time on appeal that his sentence

22

constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution and article I, section 17 of the California Constitution.

A.  *Legal Background*

Under Senate Bill No. 567 (2021-2022 Reg. Sess.), a trial court may not impose an upper term sentence unless the aggravating circumstances justify doing so, and the facts underlying those circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt.  (§ 1170, subd. (b)(1) & (2).)  Section 1170 also requires the court to impose the lower term of imprisonment if it determines that childhood trauma was a contributing factor in the commission of the charged offenses,  "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (*Id.*, subd. (b)(6).)  The court must set forth on the record the facts and reasons for choosing the sentence imposed.  (§ 1170, subd. (b)(5).)

We review a trial court's sentencing decisions for an abuse of discretion, determining whether the trial court exercised its discretion "in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  It is an abuse of discretion if the trial court "relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid*.)

B.  *Aggravating and Mitigating Factors*

Defendant claims that he "should have been acquitted" as to counts six through ten because the trial court, in finding the allegations of factors in aggravation true beyond a reasonable doubt, did not consider that counts six through ten required independent evidence to support V.L.'s allegations.  Defendant does not explain why a conclusion that the court impermissibly found true certain aggravating factors would require us to reverse his convictions, rather than conduct a harmless error analysis and potentially remand for

23

resentencing. (See, e.g., *People v. Butler* (2023) 89 Cal.App.5th 953, 960-962.) In any event, defendant's claim fails because section 803, subdivision (f) provides only the applicable statute of limitations, not an element of an offense or facts establishing punishment. (See *People v. Riskin* (2006) 143 Cal.App.4th 234, 241 [right to maintain action is essential part of the power to pronounce judgment, but that right " 'constitutes no part of the crime itself,' " and facts at issue in extension of statute of limitations "are neither elements of the crime nor facts that establish punishment"].) The court was not required to consider whether independent evidence corroborated V.L.'s allegation in the context of making findings about factors in aggravation.

Defendant also contends the trial court failed to consider three mitigating factors when imposing the sentence: (1) his sentence, with the application of an enhancement, could be more than 20 years (rule 4.423(b)(10)), (2) multiple enhancements were alleged in a single case (rule 4.423(b)(11)), and (3) he suffered physical abuse as a child (rule 4.423(b)(3)). But no enhancements were alleged, and defendant presents no evidence suggesting that physical trauma was a contributing factor in the commission of his crimes. (See § 1170, subd. (b)(6)(A).) In any event, defendant forfeited this claim by failing to raise it at sentencing, and we decline to discuss it further. (*People v. Scott* (1994) 9 Cal.4th 331, 353 ["claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" are forfeited on appeal if not raised in the trial court].)

C. *Cruel and Unusual Punishment Claim*

Defendant also forfeited his cruel and unusual punishment claim by failing to raise it in the trial court. (*People v. Brewer* (2021) 65 Cal.App.5th 199, 212; *People v. Baker* (2018) 20 Cal.App.5th 711, 720; *People v. Speight* (2014) 227 Cal.App.4th 1229, 1247.) With the exception of a bald assertion in a heading of his reply brief, defendant does not argue to the contrary, and we decline to consider this forfeited claim.

## DISPOSITION

The judgment is affirmed.

_____/s/_____
Duarte, J.

We concur:

_____/s/_____
Robie, Acting P. J.

_____/s/_____
Boulware Eurie, J.